### 39278. HIGGINBOTTOM et al. v. THIELE KAOLIN COMPANY.

BELL, Justice.

This case involves the questions whether a lessee under a mineral lease has an implied duty to mine and whether the mineral leases in question are the result of inceptive fraud.

The appellants are landowners in the McDuffie County area whose properties are subject to mineral leases entered into with Thiele Kaolin Company (Thiele) in the early nineteen sixties. The leases are essentially the same, providing for an initial term of 50 years with an option to renew for an additional term of 49 years. The leases grant to Thiele the right to mine, process, or manufacture all kaolin and bauxite on the properties which it deems "to be commercially profitable . . . ." Thiele may exercise this right "at any time and from time to time during the continuance of this contract in force." Thiele was also granted full rights of ingress to and egress from the properties and full rights to conduct any operations on the properties necessary to mining the kaolin and bauxite. In exchange, Thiele agreed to pay a royalty of $.25 for each ton of refined clay and bauxite removed and to pay one dollar per acre each year of the contract. The leases provide that these latter payments "shall be advance payments to cover the succeeding twelve months and shall be credited against amounts due as royalties . . . for kaolin and bauxite removed during the twelve (12) months to which such payment applies." The landowners also retained the right to use and occupy their lands so long as such use did not interfere with the exercise of the rights granted to Thiele.

It is undisputed that Thiele has not mined the lands in question since the inception of the leases. Because of this inaction, the

appellants filed suit against Thiele, seeking to rescind the leases on two grounds: first, for breach of an implied duty to mine within a reasonable time, and second, for fraudulent inducement. The landowners and Thiele filed motions for summary judgment. Thiele's motion was granted, and the landowners' was denied. The landowners now appeal.

1) The landowners first contend that the trial court erred in ruling that Thiele did not have an implied duty to mine. They wish to have the leases rescinded on the theory that Thiele has breached an implied duty to mine by not mining during the more than 20 years since the inception of the leases, which they contend is an unreasonable length of time. Consequently, if, as the trial court found, there is not an implied duty to mine within a reasonable time, the appellants are not entitled to relief under this theory. We affirm.

In deciding whether to imply promises or duties to the terms of a contract, " '[t]he introduction of an implied term into the contract of the parties . . . *can only be justified when the implied term is not inconsistent with some express term of the contract* and where there arises from the language of the contráct itself, and the circumstances under which it was entered into, an inference that it is absolutely necessary to introduce the term to effectuate the intention of the parties.' " 11 Williston on Contracts, 3rd Ed., p. 34, § 1295; accord, Weatherly v. American Agricultural Chem. Co., 65 SW2d 592, 598 (Tenn. App. 1933). Consequently, though courts are generally reluctant to make contracts for the parties, they will imply promises or duties when justice, good faith, or fairness so demand. Williston on Contracts, supra; 3 Corbin on Contracts, §§ 541, 561.

Georgia courts have discussed several factors which should be considered in deciding whether to imply a duty to mine on the part of a lessee. *Hodges v. Ga. Kaolin Co.,* 108 Ga. App. 115 (132 SE2d 86) (1963); *Palmer Brick Co. v. Woodward,* 138 Ga. 289 (75 SE 480) (1912).

In *Palmer Brick,* the mining company took possession of the leased property for the purposes of establishing a brick manufacturing plant there and mining clay to use in manufacturing the brick. A royalty of 12 1/2 cents per 1,000 bricks produced was to be paid. In addition, Palmer Brick was obligated to make an initial payment of $250.00 followed by $100.00 payments on the first of each month for the duration of the 20-year lease. At the end of each year, there was to be an accounting to determine if Palmer Brick's minimum monthly payments amounted to an overpayment or an underpayment in comparison to the royalties, if any, due for that year.

In determining the lessee's duties under this contract, we held

that Palmer Brick was bound either to exercise reasonable diligence in mining clay or else to pay the minimum alternative sum of $100.00 per month. The implication was that if a minimum annual rental is paid and is credited only to royalties due for the year it is made, then there is no implied duty to mine. Accord, *Sewell v. Aggregate Supply Co.,* 214 Ga. 543 (3) (5) (106 SE2d 16) (1958), and *Smith v. Aggregate Supply Co.,* 214 Ga. 20, 23-24 (102 SE2d 539) (1958). This conclusion is based on the premise that where such an annual rental is provided for by the parties, it indicates that they knew that mining might not occur for some time and intended that in that event the rental would be sufficient consideration. *Hodges,* supra, p. 117; Tennessee Valley Kaolin Corp. v. Perry, 526 SW2d 488, 491 (Tenn. App. 1975).

Conversely, the implication in *Palmer Brick* was that if the lease does not provide for a minimum rental, but instead makes rent contingent on royalties, there is an implied duty to mine within a reasonable time. The theory is that if the parties have entered into such a lease they must have contemplated a duty to mine, since otherwise the lessor would receive no benefits at all from the contract, thus frustrating his or her intention in entering the agreement. 3 Corbin on Contracts, § 541, supra; Crain v. Pure Oil Co., 25 F2d 824, 829 (8th Cir. 1928).

The impact of a lessee's contractual duty to pay a minimum rental on a judicial decision whether to impose a duty to mine was also addressed in *Hodges.* In that case, Georgia Kaolin leased 222 acres of land in 1947 for a term of 50 years. A royalty of $.15 per ton was specified, and the company was obligated to pay a "minimum rental" of one dollar per acre per year for the first five years of the lease. These rental payments were to be credited to royalties due for the year for which a payment was made. In 1954, Georgia Kaolin notified Hodges that it intended to mine, and his timber was cut, and the land cleared. For several years after removing the overburden, Georgia Kaolin did no mining. This inaction prompted Hodges to file suit. The issue on appeal was whether Georgia Kaolin had an implied duty to mine within a reasonable time after the inception of the lease.

In dicta, the Court considered whether such a duty existed during the first five years of the lease. It found such a duty did not exist, because the provision that the minimum rental payments for those years were to be credited only to royalties due for the year each payment was made indicated that "at least for that period the parties contemplated that there might not be any mining operation . . ., and hence as to it there was no implied covenant." *Hodges,* supra, p. 117. This reasoning is consistent with *Palmer Brick* and the other authorities cited therein.

However, the Court went on to establish an additional principle

by holding that once Georgia Kaolin had cleared the land a duty to exercise reasonable diligence in mining the property did arise, since notions of good faith and fairness demand the imposition of a duty to mine in exchange for exercising the right to clear and possess the lessor's property, which renders the land useless to the owner. *Hodges,* supra, pp. 118, 120. See also *Palmer Brick,* supra, pp. 297-98, where in reaching our decision we considered it important that the lessee had taken possession of the property, thus denying the owner the benefit of its possession and control.

Although the above discussion highlights considerations important to the question of whether a duty to mine should arise by implication, each case must be examined in light of its particular facts. In the instant case, an examination of the language of the contract and the circumstances of the case lead us to the conclusion that no implied duty to mine exists.

First, Thiele has not interfered with the lessors' possession or profitable use of their lands, and thus has caused them no hardship in this regard. *Hodges,* supra, p. 118. Second, the lease provides for Thiele to pay a minimum annual rental "to cover the succeeding twelve (12) months," with the annual payments only to be credited to royalties due for the year a payment is made. This provision, along with the long term of the leases (an initial term of 50 years with an option to renew for 49) and the provision that Thiele may mine "at any time and from time to time during the continuance of this contract in force," indicate that the parties knew that Thiele required discretion concerning when or whether it should mine; that they intended Thiele to have that discretion; and that they contemplated that in fact Thiele might not mine for many years or not at all, and that during the periods prior to or between mining, the minimum rental, which was sufficient to pay property taxes at the time the leases were negotiated, would be sufficient consideration to support the leases. *Hodges,* supra; *Palmer Brick,* supra; Tennessee Valley Kaolin Corp. v. Perry, supra.

Because we find that none of the above considerations necessitate the imposition of a duty to mine, we conclude that the trial court did not err in granting summary judgment to Thiele on the issue of rescission of the leases for breach of such a duty.

2) The landowners next argue that the trial court erred in granting summary judgment to Thiele on the issue of inceptive fraud. They contend the leases should be rescinded because of inceptive fraud, which they allege consisted of representations that the leases would bring great economic benefit to their area, including the building of a processing plant and railroad spur, and that their leased properties would be mined within a short time, resulting in sub-

stantial monetary benefits to them.

An action for fraudulent inducement can be made out in one of two ways. First, a plaintiff could show that "the defendant made a false, material representation of an existing fact with knowledge that it was false or with reckless disregard as to whether it was true and that it was [made] with the intent that it be acted upon by the plaintiff; and, further, that the plaintiff acted upon the misrepresentation in reasonable reliance of its truth in a manner reasonably foreseeable by the defendant and to the plaintiff's proximate injury." *Brown v. Techdata,* 238 Ga. 622, 625 (234 SE2d 787) (1977); accord, *Cheney v. Barber,* 144 Ga. App. 720 (242 SE2d 358) (1978). Additionally, a plaintiff could show that the defendant, instead of misrepresenting an existing fact, made promises as to future events with the present intention not to perform or with the knowledge that the future event would not occur. *Middlebrooks v. Lonas,* 246 Ga. 720 (1) (272 SE2d 687) (1980); *Hayes v. Hallmark Apts.,* 232 Ga. 307 (1) (207 SE2d 197) (1974); *Lively v. Garnick,* 160 Ga. App. 591 (3) (287 SE2d 553) (1981).

After reviewing the depositions submitted below, we readily conclude that the landowners' allegations of fraud do not meet the above standards for actionable fraud.[1]

First, two of the representations have in fact occurred. It is uncontradicted that a processing plant and railroad spur were built near the landowners. In addition, Thiele's operations have resulted in economic benefit to the people of the appellants' area. For example, both the plaintiff Anderson and his son have done significant amounts of work for Thiele related to carpentry, construction, and land reclamation, and Anderson's daughter has been employed at Thiele's plant for about 12 years.

In addition, the appellants' allegation that Thiele misrepresented to them that their properties would be mined shortly, is not borne out by the record. The depositions of the landowners affirmatively show that there was no misrepresentation that the appellants' properties would be mined shortly after the leases were signed. All of the landowners testified that Thiele's agents told them that mining would soon take place somewhere in the area, but not that their properties would be some of the first to be mined.

Furthermore, the depositions affirmatively show that the alleged misrepresentations of individual economic benefit do not amount to actionable fraud. Most of the representations complained

---

[1] The parties stipulated that a deposition taken in any one appellant's case could be used in any other appellant's case.

of were made after the leases were signed and could not have induced the appellants to contract with Thiele, and all of them apparently consisted of remarks by drillers of Thiele that the landowners had plenty of clay on their lands which could possibly give them economic benefits, such as driving Cadillacs. Such speculations are not the promises of future events or representations of existing facts that are required for actionable fraud. See 37 CJS 237, Fraud, §§ 12, 13; 12 Williston on Contracts, 3rd Ed., §§ 1491, 1497; Calamari and Perillo, The Law of Contracts, 2nd Ed., § 9-17.

For the above reasons, we conclude that the trial court did not err in granting summary judgment to Thiele on the issue of fraudulent inducement. OCGA § 9-11-56 (c) (Code Ann. § 81A-156); *Sanders v. Colwell,* 248 Ga. 376 (2) (283 SE2d 461) (1981).

*Judgment affirmed. All the Justices concur, except Smith, J., who dissents as to Division 2 and the judgment.*

DECIDED JUNE 23, 1983 —
REHEARING DENIED JULY 7, 1983.

*Stephen E. Curry, Percy J. Blount,* for appellants.
*Albert P. Reichert, Jr., Clarke C. Avant,* for appellee.
*Harry L. Cashin, Jr., William T. McKenzie, John B. Harris, Jr., William C. Harris, D. Robert Cumming, Jr., C. Christopher Hagy, Patricia B. Cunningham, Ronald T. Knight, George C. Grant, Robert M. Margeson III,* amici curiae.