41688. REEVES et al. v. HABERSHAM BANK et al.

(331 SE2d 589)

BELL, Justice.

On December 5, 1977, Thomas Sexton purchased Reeves Brothers Hardware and Furniture Store (hereinafter, Reeves Hardware) in Clarkesville, Georgia from the appellants, the Reeves brothers, who are his in-laws. Mr. Sexton financed the purchase pursuant to a $200,000 note with the Habersham Bank. Sexton also entered into a security agreement with Habersham Bank, granting the bank a security interest in the assets of Reeves Hardware. The security agreement stated that it covered the $200,000 note and "all other obligations of the undersigned to the secured party, however created, arising or evidenced." After the sale, one of the appellants, Robert Reeves, continued to work at the store for Sexton.

Reeves Hardware did not prosper under Mr. Sexton's ownership, and the bank announced plans to padlock the doors of the store at 4:00 o'clock p.m. on July 16, 1981. Aware of the urgency of the situation, the Reeves helped Mr. Sexton obtain a loan of $35,000 from Habersham Bank. To secure the note, each of the Reeves signed a "guaranty of payment" which stated that he unconditionally guaranteed the payment of the $35,000 note.

As additional security for the $35,000 note, the Reeves brothers signed agreements to hypothecate 150 shares each in another family business, Reeves Realty Co. The text of the hypothecation agreements stated that the "undersigned hereby authorizes Thomas Sexton . . . to hypothecate, pledge and/or deliver [150 shares of the Reeves Realty stock], and the undersigned agrees that when so hypothecated . . . said securities shall be collateral to secure any present or future indebtedness, obligation, or liability howsoever evidenced, owing by Debtor to you. . . ."

The $35,000 note stated that its "collateral" was "the following property which has been or is hereby pledged, assigned, conveyed and transferred to the Holder: [the 450 shares of Reeves Realty stock] and any other property of every kind or description now or hereafter in the possession or control of the Holder for any reason. . . ."

In addition, the $35,000 note provided that "[t]he undersigned agrees that the Holder does have a lien upon, security title to and a security interest in the Collateral to secure the payment of this Note and all other indebtedness or liability of the undersigned to Holder, however and whenever incurred or evidenced. . . ."

Even though Robert Reeves still worked at the hardware store and the Reeves had access to Sexton's financial records, they testified that they made no independent investigation of Sexton's financial condition prior to negotiating the $35,000 loan, but instead relied solely on statements made to them by the bank during the negotiation of the loan. The Reeves testified that the bank's Vice President, Johnny Myers, told them that the bank "felt" that the loan was safe and that the $35,000 would provide Sexton with the cash flow that he needed to overcome his financial difficulties.

Sexton's financial problems continued, causing him to miss payments on the $200,000 note. He subsequently surrendered Reeves Hardware to the bank, and the store's assets were liquidated. According to the bank's figures the sale netted only about $84,000, leaving a substantial portion of Sexton's indebtedness to the bank unsatisfied. The Reeves brothers, upon the bank's request, refused to pay their $35,000 guaranty or to surrender the 450 shares. Instead, they filed suit to cancel the guaranty and hypothecation agreements, and for damages. The gravamens of their claims were fraud in the inducement of the guaranty and hypothecation agreements; lack of notice of the liquidation of Reeves Hardware; and commercial unreasonableness of the liquidation. The bank counterclaimed for the amount of the guaranty, plus a declaration that it could apply the pledged stock to the entirety of the unpaid deficiency.

The parties filed cross-motions for summary judgment. The bank was granted partial summary judgment on its counterclaim by way of a judgment against the Reeves, pursuant to their guaranty, in the

amount of $35,000 plus interest. The Reeves were also ordered to surrender the pledged shares as collateral for the $35,000 note. In reaching this result, the court found that the bank was entitled to collect the debt remaining on the $35,000 note by enforcing the Reeves' guaranty and hypothecation agreements, unless the Reeves had adequately established their defense of fraud in the procurement. The court ruled that the Reeves had failed to do so, finding that the bank's representations to the Reeves were either expressions of opinion or statements of expectation and that the Reeves were familiar with Reeves Hardware's financial condition.

The court denied all other motions for summary judgment, finding that "[n]either party is entitled to summary judgment on the issues as to whether the bank is entitled to recover its deficiency against the Reeves and subject the Reeves Realty collateral to sale so that the proceeds of the foreclosure sale would be applied to the deficiency." The court ruled that there remained factual issues of proper notice of sale and commercial reasonableness.

The Reeves appeal from the grant of partial summary judgment and the denial of their motion for summary judgment.

1. We first address the Reeves' contention that the guaranty and hypothecation agreements were procured through fraud. The Reeves contend that the bank fraudulently misstated Sexton's financial condition to entice them to provide security for the $35,000 loan.

We find, however, that the trial court correctly ruled that the Reeves have not proven two of the essential elements of their fraud claim. *Higginbottom v. Thiele Kaolin Co.*, 251 Ga. 148 (2) (304 SE2d 365) (1983); *Blanchard v. West*, 115 Ga. App. 814, 815 (156 SE2d 164) (1967). First, the record shows that the statements of the bank regarding Sexton's financial situation were merely statements of opinion or expectation, and thus were not representations regarding an existing fact. *Higginbottom v. Thiele Kaolin Co.*, supra, 251 Ga. at 152.

Moreover, the record also shows that the Reeves were not justified in relying on the opinions of the bank. *Blanchard v. West*, supra, 115 Ga. App. at 815; *Shivers v. Sweda Intl., Inc.*, 146 Ga. App. 758, 759 (247 SE2d 576) (1978). The Reeves were in at least as good a position as the bank to analyze Sexton's financial condition, and their failure to investigate the matter showed a lack of due diligence. *Blanchard v. West*, supra, 115 Ga. App. at 815; *Shivers v. Sweda Intl., Inc.*, supra, 146 Ga. App. at 759.

2. We next address the Reeves' contentions that the sale of the assets of Reeves Hardware was not conducted in a commercially reasonable manner, and that they were entitled to, but did not receive, notice of that sale. For both of these reasons, the Reeves contend, the bank cannot proceed against the 450 shares collateral or the Reeves'

guaranty to recover a deficiency as to the debts remaining on either the $200,000 or $35,000 note.

a. After default by a debtor, "[a] secured party . . . may sell, lease, or otherwise dispose of any or all the collateral. . . ." OCGA § 11-9-504 (1). However, in order for a secured party to recover any deficiency between the sale price of the collateral and the debt owed, the secured party must have strictly complied with the requirements of OCGA § 11-9-504 (3), which, stated briefly, are that the secured party dispose of the collateral in a commercially reasonable manner generally and provide the debtor with reasonable notification of the disposition. *Gurwitch v. Luxurest Furniture Mfg. Co.*, 233 Ga. 934 (214 SE2d 373) (1975); *Farmers Bank v. Hubbard*, 247 Ga. 431 (276 SE2d 622) (1981), modifying *Gurwitch*, supra, in part; *Citizens State Bank v. Hewitt*, 158 Ga. App. 238 (279 SE2d 531) (1981); *Comfort Trane Air Conditioning Co. v. Trane Co.*, 592 F2d 1373, 1386 (5th Cir. 1979).

Habersham Bank contends that the rule precluding the recovery of a deficiency, although applicable when the secured party seeks to collect the deficiency through a personal judgment, is inapplicable where a secured creditor seeks to satisfy the deficiency out of collateral or pursuant to a guaranty. We disagree. The Georgia rule concerning the recovery of a deficiency after a foreclosure sale of collateral is that, if the creditor does not comply with the requirements of OCGA § 11-9-504 (3), he loses his right to recover a deficiency, not merely his right to recover a personal judgment against the debtor. *Gurwitch v. Luxurest Furniture Mfg. Co.*, supra, 233 Ga. 934. This rule is not predicated on the method of the recovery of the deficiency, and we decline to make such a distinction now. See generally *Rushton v. Shea*, 423 FSupp. 468 (D.C. Del. 1976); *Barbree v. Allis-Chalmers Corp.*, 250 Ga. 409 (297 SE2d 465) (1982); *First Alabama Bank of Montgomery, N.A. v. Parsons*, 390 S2d 640 (Ala. App. 1980).

b. Under the hypothecation agreements, the 450 shares of Reeves Realty Co. stock are collateral for the $200,000 note, as well as the $35,000 note, because the $35,000 note provides that its collateral was given "to secure the payment of this Note and all other indebtedness or liability" of Sexton to Habersham Bank.

c. The Reeves contend that the security agreement entered into at the time of the $200,000 note contained a future advances clause, OCGA § 11-9-204 (3), and thus secured the $35,000 note, and that Habersham Bank, in proceeding with the foreclosure sale of the assets of Reeves Hardware, invoked the future advances clause to try to satisfy the $35,000 note, in addition to the $200,000 note. The Reeves contend that the deficiency now remaining therefore encompasses the $35,000 debt. Thus, based on their contentions that the liquidation sale was not conducted in a commercially reasonable fashion and that

they were entitled to, but did not receive notice of the sale, the Reeves contend that the bank cannot proceed against their collateral or guaranty to satisfy the debt remaining on the $35,000 note. Similarly, they contend that, in any event, as the deficiency now remaining clearly includes that remaining on the $200,000 note, the bank may not proceed against their 450 shares of stock, which under the terms of the $35,000 note secure the $200,000 note, to collect the deficiency remaining on the $200,000 note.

d. As we perceive that the Reeves' contention that the bank in fact invoked a future advances clause will be determinative of the extent to which the Reeves can avail themselves of the defenses that the liquidation sale was commercially unreasonable and that they were entitled to, but did not receive, notice thereof, we now undertake to resolve the effect of the use of such a future advances clause.

If the Reeves' contention that the bank invoked the future advances clause is correct, then an interesting question would be presented. That question would be whether the bank, whose counterclaim would then include the recovery of the deficiencies on both the $200,000 note and $35,000 notes (as foreclosure would have been had for both), would be precluded from recovering any of Sexton's deficiencies, if the sale of the assets of Reeves Hardware was not conducted in a commercially reasonable fashion or if the Reeves were entitled to, but did not receive, notice thereof. See *Jerkins v. Savannah Valley Production Credit Assn.*, 157 Ga. App. 652 (1) (278 SE2d 431) (1981), for a case in which this issue was raised, but did not have to be resolved.

Although we can discover no case on point, we see no reason to distinguish, for purposes of the rule that a secured party who fails to comply with the requirements of OCGA § 11-9-504 (3) loses his right to any deficiency from the foreclosure sale, between a creditor who does invoke a future advances clause and proceeds to attempt to satisfy several debts, as opposed to a secured party who attempts to satisfy only one debt pursuant to the sale. If the latter cannot recover a deficiency if he does not comply with OCGA § 11-9-504 (3), neither should the former. Both should be required to comply with § 11-9-504 (3), the requirements of which serve the ultimate purpose of minimizing any possible deficiencies remaining after the sale, see *Barbree v. Allis-Chalmers Corp.*, supra, 250 Ga. at 410, or face the possibility of losing their right to recover any deficiencies.

If the rule were otherwise, unfair and contradictory results could occur. For instance, assume a situation where a secured party invoked a future advances clause and proceeded to sell the collateral to satisfy two debts, one for $100,000, constituting the note at which time the security agreement was entered, the other for $50,000, both of which, respectively, were guaranteed by persons we will call X and Y. X, as

guarantor of the $100,000 debt, would clearly be entitled to notice and be entitled to have the secured party conduct the sale in a commercially reasonable fashion, so as to minimize any possible deficiencies arising from the sale. See Division 4, infra. Y would have the same interest, since he could be liable for any deficiency remaining on the $50,000 note after the sale of the collateral. To hold that Y would not be entitled to notice and could not challenge the sale as commercially unreasonable would be unfair, as well as contradictory to the conclusion that X was entitled to notice and to have the sale conducted in a commercially reasonable fashion.

Having announced this rule, we must now remand this case for a determination by the trial court concerning whether the security agreement for the $200,000 note contained a future advances clause, and whether Habersham Bank invoked it in order to proceed against all of Sexton's debts at the foreclosure sale. We do so, because it appears that the trial court has not addressed the former issue, and we cannot discern the answer to the latter from the record.

The extent to which the Reeves can defend against the bank's counterclaim in the instant case depends upon the answers to the above questions. If both answers are affirmative, then the Reeves are entitled to defend against the bank's efforts to collect any deficiencies on both the $200,000 and $35,000 notes either by way of proceeding against their collateral or their guaranty.

Moreover, even if the answers are negative, the Reeves are still entitled to defend against the bank's efforts to sell their collateral to satisfy any deficiency on the $200,000 note, because the present action clearly involves an attempt to satisfy any deficiency remaining thereon, and because, pursuant to the $35,000 note, the Reeves' 450 shares can be used to satisfy that debt.

3. We now move to the merits of the Reeves' contentions regarding their defenses to the bank's efforts to collect on Sexton's deficiency. First, with regard to their contention that the sale of the assets of Reeves Hardware was not conducted in a commercially reasonable fashion, and that the trial court erred in not granting them summary judgment on the issue, we conclude, after examining the record, that the trial court correctly reserved this issue for determination by a jury. *Gordon v. Weldon,* 154 Ga. App. 531 (268 SE2d 796) (1980); *Comfort Trane Air Conditioning Co. v. Trane Co.,* supra.

4. Second, we consider the Reeves' contentions regarding their defense that they were entitled to notice of the liquidation sale of the assets of Reeves Hardware under OCGA § 11-9-504 (3), and that they did not receive the required notice.

Generally, if a "debtor" is entitled to notice under OCGA § 11-9-504 (3), and the notice requirements thereof are not satisfied, the secured party is precluded from proceeding against the debtor to satisfy

the deficiency remaining on the debt. E.g., *Barbree v. Allis-Chalmers Corp.*, supra, 250 Ga. 409; *Gurwitch v. Luxurest Furniture Mfg. Co.*, supra, 233 Ga. at 934; *Citizens State Bank v. Hewitt*, supra, 158 Ga. App. at 241; *GEMC Credit Union v. Shoemake*, 151 Ga. App. 705, 706 (261 SE2d 443) (1979).

OCGA § 11-9-504 (3) provides that, "reasonable notification of the time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor. . . ." OCGA § 11-9-105 (d) defines "debtor" as "the person who owes payment or other performance of the obligation secured, whether or not he has rights in the collateral, and includes the seller of accounts or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term 'debtor' means the owner of the collateral in any provision of the article [Article 9 of Title 11] dealing with the collateral, the obligor in any provision of the article dealing with the obligation, and may include both where the context so requires."

In the instant case, the issue is whether the Reeves were "debtors" within the meaning of OCGA § 11-9-504 (3) and therefore entitled to notice. In making this determination, we must look to the purpose of requiring notice. " 'The purpose of requiring notice is threefold. It gives the debtor an opportunity to exercise the right of redemption of the repossessed collateral . . . It also gives him the chance to challenge any aspect of the disposition before it is made. Finally, it offers the debtor the opportunity to seek out persons who might be interested in purchasing the collateral . . . Particularly the last two of these purposes serve the ultimate goal of allowing the debtor to maximize the sale price of the collateral and, thus, minimize any deficiency for which he will be liable.' " *Barbree v. Allis-Chalmers Corp.*, supra, 250 Ga. at 410 (quoting *Rushton v. Shea*, 423 FSupp. 468, 469 (D.C. Del. 1976)). Accord *First Nat. Bank of Denver v. Cillessen*, 622 P2d 598 (1) (Colo. App. 1980); *Chase Manhattan Bank, N.A. v. Natarelli*, 93 Misc. 2d 78 (401 NYS2d 404) (1977).

Courts in many jurisdictions have recognized that, in addition to the debtor who is the primary obligor, there are many persons who may be liable for a deficiency judgment and should be considered "debtors" within the meaning of OCGA § 11-9-504 (3). See, e.g., *Barbree v. Allis-Chalmers Corp.*, supra, 250 Ga. 409 (seller of chattel paper with full recourse against him in the case of a deficiency is a debtor entitled to notice); *First Alabama Bank of Montgomery, N.A. v. Parsons*, supra (guarantor debtor); *Norton v. Nat. Bank of Commerce*, 398 SW2d 538 (Ark. 1966) (automobile dealer a debtor where he sold a car under a conditional sales contract which was assigned to a bank under an assignment providing that if the conditional vendee defaulted, the dealer would repurchase the car for the amount due

thereon); *First Nat. Bank of Denver v. Cillessen,* supra, 622 P2d 598 (acccomodation co-makers of note are debtors); *Adams v. B & D Builders &c., Inc.,* 477 A2d 628 (Vt. 1984) (stockholders of corporation who guaranteed obligation of corporation are debtors). The rationale common to these cases is that persons who face possible deficiency claims arising from a foreclosure sale continue to owe "other performance of the obligation secured," OCGA § 11-9-105 (1) (d), and have an interest in seeing that the collateral is sold for the best possible price. Accordingly, they have been held to be debtors entitled to notice under OCGA § 11-9-504 (3). See *Barbree v. Allis-Chalmers Corp.,* supra, 250 Ga. at 411; *Rushton v. Shea,* supra 423 FSupp. at 470; *First Nat. Bank of Denver v. Cillessen,* supra, 622 P2d at 600.

In conformity with the above principles and with our decision in *Barbree v. Allis-Chalmers Corp.,* supra, 250 Ga. at 412, in which we overruled *Brinson v. Commercial Bank,* 138 Ga. App. 177 (225 SE2d 701) (1976) (in which the Court of Appeals had held that a guarantor was not a debtor), we now hold, as do a majority of jurisdictions, that a guarantor is a debtor within the meaning of OCGA § 11-9-504 (3). See *First Nat. Bank of Denver v. Cillessen,* supra, 622 P2d 598 and cites therein; *Hepworth v. Orlando Bank & Trust Co.,* 323 S2d 41 (Ct. App. Fla. 1975). Accordingly, we conclude that if, as the Reeves contend, the deficiency remaining after the sale of the assets of Reeves Hardware includes the debt remaining on the $35,000 note, see Divisions 2 (c) and (d), supra, the Reeves, as guarantors of the $35,000 note, were entitled to notice of the sale under OCGA § 11-9-504 (3).

5. With regard to the Reeves' status as owners of collateral for the $200,000 and $35,000 debts, we reach a similar conclusion. In *Rushton v. Shea,* supra, 423 FSupp. at 470, the court, applying the above principles, held that notice was required to be given to an owner of collateral, if that collateral could be used to satisfy any possible deficiency arising from a foreclosure sale. In that case, Rushton was not a guarantor of a note that was secured by the assets of a corporation, which for convenience we shall call "A." However, Rushton's stock in another corporation, which for convenience we shall call "B," also secured the note. The primary debtor of the note in question went into default, and the secured creditor proceeded to sell the assets of A, but the sale failed to satisfy the underlying debt. The secured creditor then sought to satisfy the deficiency by seeking to sell Rushton's stock in B. Rushton defended on the ground that he was entitled to notice of the sale of the assets of A. The court agreed, finding that since he was obliged to surrender his stock if the sale of the assets of A produced a deficiency, "he still owed 'performance of the obligation secured' . . . and was a debtor to whom notice was owed under § 9-504(3)." *Rushton v. Shea,* supra, 423 FSupp. at 470.

Based on the foregoing, we hold that the Reeves, who were

obliged to surrender their stock if the sale of the Reeves Hardware assets produced a deficiency on the $200,000 note, were entitled to notice under OCGA § 11-9-504 (3). Moreover, if, as the Reeves contend, the present deficiency includes the debt remaining on the $35,000 note, the Reeves were entitled to notice for this additional reason, as their stock could also be used to satisfy any deficiency thereunder.

6. Having determined that the bank was required to give notice to the Reeves, we now address the Reeves' contention that they did not receive the notice required by OCGA § 11-9-504 (3). The Reeves acknowledge that on January 18, 1982, Habersham Bank sent a letter to the Reeves Realty Co., addressed to one of appellants, James Robert Reeves (who was then president of the company), which informed him of the impending sale of the assets of Reeves Hardware. The Reeves, however, contend that this letter was not reasonable notice, as it was specifically sent to them because of their status as secondary lienholders on the assets of Reeves Hardware,[1] see OCGA § 11-9-504 (3), and not because of their status as debtors under OCGA § 11-9-504 (3). We disagree.

The purpose of providing notice to debtors is to afford them an opportunity, inter alia, to take steps to protect their interests by taking part in the sale or other disposition if they so desire. Id. at 829; *Barbree v. Allis-Chalmers Corp.*, supra, 250 Ga. at 410.

In the present case, we readily conclude that the January 18, 1982, letter satisfied this purpose, and constituted reasonable notice. It was sent to the Reeves brother who was president of Reeves Realty Co., which the three brothers all took part in managing. Thus, it is reasonable to conclude that the letter informed all three brothers of the sale of the assets of Reeves Hardware, so that they could then take steps to protect their interests. Moreover, this conclusion is buttressed by the record, which shows that all three of the appellants knew of the liquidation sale, could have and did make suggestions as to how it should be conducted, and visited the store occasionally while the sale was being conducted. In fact, J. R. Reeves testified that he discussed who should conduct the liquidation sale with a bank officer. Reeves said that, when the officer mentioned that he had talked to A & J Mattress Co. about conducting the sale, Reeves responded that he felt like A & J Mattress had done a good job liquidating the furniture line of Reeves Hardware Co. for Sexton in the summer of 1981, and could do a good job handling the sale of the assets of the

---

[1] As part of the sale of Reeves Hardware in 1977, Sexton, in addition to paying the Reeves $200,000 cash, executed a promissory note in their favor, as well as a security agreement granting them a security interest, secondary to that granted the bank at the time of the $200,000 note, in the assets of Reeves Hardware.

company.

Based on the foregoing, we find that the trial court should have granted summary judgment to Habersham Bank on the issue of notification. Moreover, based on our holding in Division 2 (d) that, if the bank proceeded under a future advances clause, the Reeves can challenge the bank's efforts to collect any deficiency remaining on Sexton's $35,000 debt (they could then do so on the ground that the sale of the assets of Reeves Hardware was not conducted in a commercially reasonable manner, see Division 3, supra), we hold that the trial court erred in granting partial summary judgment to the bank with regard to the Reeves' liability for the satisfaction of the $35,000 debt.

7. We have examined appellants' remaining enumerations, and find no error.

*Judgment affirmed in part and reversed in part. All the Justices concur, except Hill, C. J., who, with respect to Divisions 2 (d), 4, and 5, concurs in the judgment only, and Marshall, P. J., who concurs in the judgment only. Gregory and Weltner, JJ., not participating.*

DECIDED JULY 3, 1985 —
REHEARING DENIED JULY 24, 1985.

*M. Keith York, Smith & Harrington, Will Ed Smith,* for appellants.

*Alston & Bird, Jay D. Bennett, John E. Stephenson, Jr., Stephen D. Frankum, Phillip L. Hartley,* for appellees.