MID CITY BANK, INC., A NEBRASKA CORPORATION, APPELLEE, V. OMAHA BUTCHER SUPPLY, INC., A NEBRASKA CORPORATION, APPELLEE, AND DOUGLAS COUNTY BANK & TRUST CO., A NEBRASKA CORPORATION, APPELLANT.

385 N.W.2d 917

Filed May 2, 1986.   No. 85-692.

William G. Dittrick of Baird, Holm, McEachen, Pedersen, Hamann & Strasheim, for appellant.

William J. Lindsay and William J. Lindsay, Jr., of Lindsay & Lindsay, for appellee Mid City Bank.

Krivosha, C.J., Boslaugh, White, Hastings, Shanahan, and Grant, JJ.

Grant, J.

This case was brought by Mid City Bank, Inc., a Nebraska banking corporation, against Omaha Butcher Supply, Inc., a Nebraska corporation, and Douglas County Bank & Trust Co., a Nebraska banking corporation. Mid City sought to replevy from Douglas County Bank certain personal property of Omaha Butcher Supply, which property both Mid City and Douglas County Bank claimed as collateral security pledged by Omaha Butcher Supply to each of the banks, and which property Douglas County Bank had earlier replevied from Omaha Butcher Supply. After the suit was commenced, and after a court hearing, the trial court gave possession of the property to Mid City pending trial. Before trial, the property was sold for $21,570.82, and Mid City retained the proceeds pending resolution of the dispute between Mid City and Douglas County Bank. Omaha Butcher Supply took no further part in the proceedings.

After trial to the court, without a jury, the matter was submitted on a stipulation of facts and the record of the earlier hearing on temporary possession.

The trial court rendered judgment on July 10, 1985, allowing Mid City to retain the $21,570.82 in its possession and entered a judgment in favor of Mid City and against Douglas County Bank for $21,570.82. On July 18, 1985, Douglas County Bank filed a motion for a new trial or, "in the alternative, to modify the judgment of this Court entered on July 10, 1985." This pleading pointed out that a judgment against Douglas County Bank was improper because the case was a replevin action and Mid City already had the proceeds of the replevin in its hands. On July 29, 1985, the trial court entered an order which vacated the July 10, 1985, order, found that Mid City was entitled to retain the proceeds, and overruled the motion for new trial. On August 27, 1985, Douglas County Bank filed its notice of appeal "from judgment of this Court dated July 10, 1985, and the order of this Court of July 29, 1985, overruling this Defendant's motion for a new trial."

Douglas County Bank assigns three errors which may be considered as two: (1) That the trial court erred in finding that Mid City had a security interest in the collateral; and (2) That the trial court erred in finding that any security interest of Mid City was superior to that of Douglas County Bank and that Mid City was, therefore, entitled to the collateral sale proceeds of $21,570.82. For the reasons hereinafter set out, we affirm.

Appellee Mid City first contends that this court has no jurisdiction of the appeal because a notice of appeal must be from an existing judgment or from the denial of a motion for new trial. Mid City contends that the notice of appeal states it is from the "judgment . . . dated July 10, 1985" (which judgment was vacated by the trial court), and from the order of the trial court "of July 29, 1985, overruling this Defendant's motion for a new trial." Mid City contends that there is no notice of appeal from any existing judgment. We do not agree.

A similar situation was presented to this court in *Brandt v. Mayer*, 196 Neb. 751, 246 N.W.2d 203 (1976). In that case the trial court sustained the defendant's motion for new trial in part and amended an error in the judgment to which the new trial motion was directed. The trial court entered an amended judgment reducing the judgment awarded to the plaintiff from $8,176.90 to $4,432.92. Defendant did not file another motion for new trial but appealed from the $4,432.92 judgment. This court stated at 754, 246 N.W.2d at 204-05:

Defendants contend it was necessary for the plaintiff to file a motion for a new trial before processing this appeal. We determine it was not. The purpose of a new trial motion is to give the trial court an opportunity after judgment to review and correct alleged errors in the previous proceeding. [Citation omitted.]

The court did correct alleged errors on defendants' motion for a new trial. Another motion for a new trial would merely address the same points already passed on in the defendants' motion for new trial. To again require the trial court to review the record would be a useless gesture. We hold the appeal is properly before us. Where a modified judgment is entered after a trial court rules on a motion for new trial, another motion for new trial on the

modified judgment is not required.

Similarly, in the case at bar the trial court granted a portion of Douglas County Bank's motion for new trial and corrected the obvious error in its earlier judgment. A new judgment was entered on the docket in abbreviated form on July 29, 1985, and appellant timely filed its notice of appeal on August 27, 1985, from the "order of this Court of July 29, 1985." The phrase "overruling this Defendant's motion for a new trial" followed both the reference in the motion to the judgment of July 10 and the order of July 29, and was surplusage. The notice of appeal as filed by Douglas County Bank was sufficient to give this court jurisdiction of this appeal.

The record shows the following. Mid City's security interest was created by a promissory note and security agreement dated October 27, 1978, a hypothecation agreement dated October 27, 1978, and a financing statement filed with the Douglas County clerk on November 1, 1978, as required at that time by Neb. U.C.C. § 9-401(1)(c) at 562 (Reissue 1980). The promissory note and security agreement and the financing statement were signed by Calvin C. Campbell and Agnes E. Campbell, the sole stockholders, and the president and secretary, respectively, of Omaha Butcher Supply. The financing statement identified the debtor as Omaha Butcher Supply, Inc. The hypothecation agreement was directed to Mid City and stated that the agreement authorized

Calvin C. and Agnes E. Campbell (herein called Debtor) to hypothecate, pledge and/or deliver the securities described below belonging to the undersigned . . . . The undersigned further agrees that said securities shall be subject to disposition in accordance with the terms and conditions of the instruments evidencing such indebtedness . . . of Debtor . . . .

The hypothecation agreement was signed "Omaha Butcher Supply Co. Inc. By: Calvin C. Campbell, President, By: Agnes E. Campbell." The money borrowed from Mid City was entirely for the business of Omaha Butcher Supply.

The hypothecation agreement, the promissory note to Mid City, and the financing statement filed by Mid City all describe the collateral as "All equipment, supplies, and parts of Omaha

Butcher Supply Inc. now owned and hereafter acquired, since July 13, 1977."

On June 21, 1982, Omaha Butcher Supply, by Calvin C. Campbell as president and Agnes E. Campbell as secretary, executed a promissory note to Douglas County Bank. This note recited that its payment was "secured by a Mortgage of even date herewith on real estate . . . inventory, accounts receivable, equipment, personal guarantees, and financial statements." On June 21 Omaha Butcher Supply also executed a "Financing Statement and Security Agreement" in favor of Douglas County Bank. On June 28, 1982, Douglas County Bank filed a "Financing Statement" with the Nebraska Secretary of State, as then required by Neb. U.C.C. § 9-401(1)(c) at 564 (Reissue 1980). The "Financing Statement and Security Agreement" and the "Financing Statement" name as collateral "All inventory, accounts receivable, and equipment now owned or hereafter acquired . . . ."

The balance due on both the Mid City Bank loan and the Douglas County Bank loan exceeds the value of the collateral. Each bank's note was declared due and payable before the action was commenced.

Omaha Butcher Supply, a Nebraska corporation, operated a business which sold, installed, and repaired equipment for grocery stores, supermarkets, restaurants, and related businesses. Parts and supplies were also sold. The items sold included "everything from knives and forks and spoons up to slicers and verticals, cutters, and mixers, cutting tables," and included the selling of "All equipment in the [grocery] store with the exception of cash registers." The business was operated with, as described by the corporation president, three profit centers: equipment, supplies, and parts. The items sold through each of the profit centers constituted the inventory of the company.

Douglas County Bank was aware of the existence of the Mid City loan. The record does not show any Uniform Commercial Code search made by Douglas County Bank. Douglas County Bank did not produce any evidence to show that it had known of the existence of the Mid City financing statement. The Mid City financing statement, with the Douglas County filing

stamp, named Omaha Butcher Supply as the debtor, the same company which later borrowed from Douglas County Bank. The Mid City Bank financing statement was also later filed with the Nebraska Secretary of State.

With regard to Douglas County Bank's first assignment of error—that is, the trial court erred in finding that Mid City had a security interest in the collateral—Douglas County Bank contends that Mid City does not have a perfected security interest in the collateral because the collateral was owned by Omaha Butcher Supply and the Mid City promissory note and security agreement were executed by the Campbells in their individual capacities. In that connection we recognize that, as contended by Douglas County Bank, the Uniform Commercial Code states that "a security interest is not enforceable against the debtor or third parties with respect to the collateral and does not attach unless (a) . . . the debtor has signed a security agreement which contains a description of the collateral . . . and . . . (c) the debtor has rights in the collateral." Neb. U.C.C. § 9-203 (Reissue 1980). Neb. U.C.C. § 9-105(1)(d) (Reissue 1980) states, in defining debtor,

> Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision of the article dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires.

In Neb. U.C.C. § 9-112 (Reissue 1980), the code sets out the rights of the parties where the collateral is not owned by the debtor. This court has recognized the right to encumber the property of another when we held in *Val-U Constr. Co. v. Contractors, Inc.*, 213 Neb. 291, 295, 328 N.W.2d 774, 777 (1983), "Although the code permits a security interest to be taken in property owned by a third party, the authority to encumber the property must be established under other rules of law." In *Val-U Constr. Co., supra*, the authority of the president of that corporation to encumber the property of the corporation was not established. In the case at bar, such authority was established.

The hypothecation agreement signed by Omaha Butcher

Supply, by its terms, gives the Campbells authority to encumber Omaha Butcher Supply's property. Such a hypothecation agreement is defined in 42 C.J.S. at 370 (1944) as

> a contract of mortgage or pledge in which the subject matter is not delivered into the possession of the pledgee or pawnee; or, conversely, a right which a creditor has over a thing belonging to another, and which consists in a power to cause it to be sold in order to be paid as claim out of the proceeds.

It is the latter part of the definition we are here concerned with, since the right of Mid City to the collateral depends on the right of the Campbells to encumber the property of Omaha Butcher Supply. The concept of hypothecation was recognized by the court in *Sederstrom v. Burge*, 216 Neb. 512, 513, 343 N.W.2d 770, 771 (1984), where the facts showed that property owned by the Burges had been given by trust deed to a lending agency "as additional security and collateral for the Lucht loan pursuant to a hypothecation agreement." See, also, *Reeves v. Habersham Bank*, 254 Ga. 615, 331 S.E.2d 589 (1985); *Ocean Nat. Bank of Kennebunk v. Diment*, 462 A.2d 35 (Me. 1983).

Under the ruling in *Val-U Constr. Co. v. Contractors, Inc., supra* at 295, 328 N.W.2d at 777, the authority of the Campbells to encumber Omaha Butcher Supply's property has been established by "other rules of law." Those other rules of law in this case are the laws determining the rights under authorized hypothecation agreements. We hold that under an authorized hypothecation agreement a debtor may confer a right on a creditor in property belonging to another sufficient to create a security interest in such property which may be perfected under the Uniform Commercial Code. The Campbells had an interest in the collateral described in the financing statement of Mid City, and Mid City had an enforceable security interest in that collateral.

With regard to the second assignment of error—that is, that the trial court erred in finding that the security interest of Mid City was superior to the security interest of Douglas County Bank—Douglas County Bank contends that it is entitled to the proceeds of the sale of the collateral in question because it had a perfected security interest in the "inventory" of Omaha

Butcher Supply, while Mid City had a security interest in "equipment, supplies, and parts," not "inventory." It is Mid City's position that the words used in its security agreement ("equipment, supplies, and parts") describe the same collateral as the word used in Douglas County Bank's security agreement ("inventory") and that Mid City's security interest was perfected. If Mid City's contention is correct, Mid City would have priority over Douglas County Bank, since the Mid City filing was prior to the filing of the Douglas County Bank. Neb. U.C.C. § 9-312(5)(a) (Cum. Supp. 1984).

The issue of the perfecting of Mid City's security interest, in this case, is determined by the sufficiency of the description of the collateral in the Mid City financing statement. Neb. U.C.C § 9-110 (Reissue 1980) provides: "For the purposes of this article any description of personal property or real estate is sufficient whether or not it is specific if it reasonably identifies what is described." Neb. U.C.C. § 9-402 (Reissue 1971), in effect at the time of the filing of the financing statements of Mid City, provides in part:

(1) A financing statement is sufficient if it is signed by the debtor and the secured party, gives an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor and contains a statement indicating the types, or describing the items, of collateral.

Section 9-402 (Reissue 1980), in effect at the time of the financing statement filed by Douglas County Bank, requires essentially the same information, except in the current statute the statement did not have to be signed by the secured party. We are here concerned with the sufficiency of the description with regard to giving notice to Douglas County Bank at the time that the bank took a security interest in the same property which Mid City contends was described in its financing statement. We hold the description "all equipment, supplies, and parts," set out in the Mid City statement, was sufficient to identify all the inventory held for sale by Omaha Butcher Supply.

The evidence shows that at the time Calvin C. Campbell borrowed money from Douglas County Bank, he told the loan officer of that bank that he was going to pay off all loans from

Mid City covering all equipment, supplies, and parts, and that that loan officer had a list of that property. Of course, at that time Mid City's financing statement had been on file in Douglas County more than 3 years. That statement disclosed the same information. The Mid City financing statement also gave the name of the debtor as "Omaha Butcher Supply Inc., 14623 Industrial Rd., Omaha, Nebraska 68144." Any cursory examination made by Douglas County Bank as to Mid City's financing statement, together with the additional information available to it, would make it certain that "all equipment, supplies, and parts" were the "inventory" of Omaha Butcher Supply and had been the subject of a security interest in Mid City for more than 3 years. We hold that under the Uniform Commercial Code a financing statement is sufficient in describing the collateral stated in the financing statement if it sets out an address of the secured party from which information concerning the security interest may be obtained, gives a mailing address of the debtor, and contains a statement indicating the types, or describing the items, of collateral, and reasonably defines the collateral.

Mid City had a prior security interest in the collateral, and the order of the trial court granting the proceeds of the sale of that collateral to Mid City was correct and is affirmed.

AFFIRMED.

CAPORALE, J., not participating.