MACON–BIBB COUNTY HOSPITAL
AUTHORITY d/b/a Medical Center
of Central Georgia, Plaintiff,

v.

GEORGIA KAOLIN COMPANY, INC.
and Washington National Insurance
Company, Defendants.

Civ. A. No. 83–140–2–MAC.

United States District Court,
M.D. Georgia,
Macon Division.

Sept. 15, 1986.

John A. Draughon, Sell & Melton, Susan S. Cole, Anderson, Walker & Reichert, Macon, Ga., for plaintiff.

William C. Harris, Harris, Watkins, Davis & Chambless, Macon, Ga., for defendants.

FITZPATRICK, District Judge:

This case is before the court on cross-motions for summary judgment. Plaintiff

Macon-Bibb County Hospital Authority brought suit against Georgia Kaolin, Inc., and Washington National Insurance, Inc., Georgia Kaolin's insurer, for payment for services rendered to Mr. Ben Dock White. Mr. White, a former Georgia Kaolin employee, entered the Medical Center of Georgia (represented in this suit by the hospital authority), on March 8, 1979, and remained there until his death on April 12, 1979. Upon entering the hospital, Mr. White told hospital employees that he did not have insurance, and the hospital categorized him as a "self-pay" patient. However, on April 6, 1979, an employee in the Social Services Department of the Medical Center of Georgia (MCG) telephoned Georgia Kaolin to see whether Mr. White might be covered under their hospitalization insurance policy.

The parties do not dispute that one of Georgia Kaolin's employees advised MCG on April 6 that Mr. White was its employee, and that he was fully covered by their group hospitalization policy. The policy, according to Georgia Kaolin personnel, would pay all hospital charges at semi-private room rates and all miscellaneous charges for 70 days with a $25.00 deductible. The Georgia Kaolin employee told MCG that the policy contained a $250,000 aggregate major medical benefit. On April 12, 1979, an MCG employee verified this same insurance coverage with Georgia Kaolin's Director of Personnel.

After Mr. White died, MCG sent Georgia Kaolin a bill for his hospitalization totalling $76,009.45. Washington National paid $2,970 on the bill, but refused to pay the remainder. Washington National and Georgia Kaolin decided, after examining Mr. White's records, that he was not entitled to full coverage under the group hospitalization plan. Instead, he was entitled to reduced coverage due to his status as a retired employee at the time of his hospitalization.

MCG admits that it received the information as to Mr. White's reduced coverage on June 26, 1979, from an unidentified employee in Georgia Kaolin's personnel department. If MCG had filed for reimbursement from the Medical Assistance Program of the State of Georgia by July 31, 1979, it could have received payment for approximately 69% of Mr. White's hospital bill. However, MCG chose not to rely on the information of reduced coverage for Mr. White, asserting that it was relayed to them by an "unknown, unidentified employee" at Georgia Kaolin. Instead, MCG let the July 31 deadline for filing for Medicaid pass, while waiting for confirmation of Mr. White's reduced coverage from Georgia Kaolin's Director of Personnel.

Subsequently, MCG contacted Georgia Kaolin's Personnel Director who told them unequivocally that Mr. White was considered a retired employee during the period of hospitalization, and that Washington National would not pay the remainder of the bill. Approximately one year later, on September 11, 1980, MCG applied for medical assistance from the state. The assistance was denied because of MCG's failure to timely file an application by July 31, 1979.

Plaintiff brought suit in the Superior Court of Bibb County on March 11, 1983, alleging that Georgia Kaolin had fraudulently represented that Mr. White was fully covered, and that MCG had detrimentally relied on this misrepresentation by failing to file for Medicaid. Because of the alleged misrepresentation, MCG contends that Georgia Kaolin is estopped from denying coverage, and claims that it is entitled to recover the amount of the hospital bill in an independent action in tort arising from the fraud. The case was removed to this court pursuant to 28 U.S.C. § 1332 (1984).

During the course of discovery, plaintiff added a second claim to the suit. A dispute arose as to whether Georgia Kaolin's conclusion that Mr. White was not fully covered was correct. After taking the deposition of a Washington National agent, plaintiffs learned that, at one other time subsequent to Mr. White's last day as a Georgia Kaolin employee, Georgia Kaolin paid for Mr. White's hospitalization as if he were an active employee. Therefore, MCG claims that Mr. White was fully covered under the

terms of the policy, and that Georgia Kaolin's later representation of reduced coverage was fraudulent.

The policy itself specifically provides that no action can be brought on the policy within three years and ninety days after expenses are incurred by the insured. Mr. White's last day of hospitalization was on April 12, 1979, and suit was not brought to recover for the expenses of his hospitalization until March 11, 1983. In addition to considering the merits of plaintiff's allegations of fraud, this court must consider the question of whether either or both of plaintiff's claims are barred by the statute of limitations set forth in the policy.

A. Plaintiff has failed to put forth evidence to show that Georgia Kaolin's representation of full coverage for Mr. White was fraudulent.

Plaintiff claims that Georgia Kaolin and Washington National are equitably estopped from denying coverage for Mr. White's hospital bills. Plaintiff's original complaint requests punitive damages for the fraud itself and compensatory damages for payment of Mr. White's hospital bill.

■ This court concludes that plaintiff has failed to adequately prove the elements of fraud (either actual or constructive) to withstand defendant's motion for summary judgment, as there is no issue of material fact, and defendant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). "Questions of fraud, bad faith, and materiality of misrepresentation are normally for the jury." *Grizzle v. Guarantee Ins. Co.,* 602 F.Supp. 465, 467 (N.D.Ga.1984), *aff'd* 755 F.2d 174 (11th Cir.1985); *Adkins v. Lee,* 127 Ga.App. 261, 193 S.E.2d 252 (1972). However, to survive a motion for summary judgment, plaintiff must show evidence of the existence of an issue of material fact:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party *may not rest upon the mere allegations or denials of his pleadings,* but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial . . .

Fed.R.Civ.P. § 56(e) (emphasis added).

Plaintiff may not merely allege the existence of a typical jury question, such as fraud, in an attempt to create an issue of fact to escape summary judgment. *See generally Celotex Corp. v. Catrett,* —— U.S. ——, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Plaintiff in this case has failed to prove that an issue of material fact exists with respect to each of the elements of actual fraud.

The elements of actual fraud, each of which must be satisfied for plaintiff to recover in tort for fraud, include: that the defendant made false representations; that the defendant knew of the falsity of the representations; that the defendant made the representations with the purpose and intention of deceiving the plaintiff; that the plaintiff reasonably relied on the representations; and that the plaintiff sustained losses as a result of the representations by the defendant. *Brown v. Ragsdale Motor Co.,* 65 Ga.App. 727, 16 S.E.2d 176 (1941); *C.P.D. Chemical Co. v. National Car Rental Systems,* 148 Ga.App. 756, 252 S.E.2d 665 (1979). The record must disclose a genuine issue of material fact as to each of these elements for plaintiff to withstand a motion for summary judgment. *Reeves v. Habersham Bank,* 254 Ga. 615, 331 S.E.2d 589 (1985).

■ Plaintiff has satisfied the first requirement, as Georgia Kaolin has admitted that it told MCG employees on two occasions that Mr. White was fully covered. However, plaintiff has put forth no evidence to create an issue of material fact as to whether defendant knew of the true nature of Mr. White's coverage and deceived the plaintiff through its oral statement that Mr. White was fully covered. Scienter, and an intentional deceitful purpose, are essential to an action for actual fraud. *Penn Mutual Life Ins. Co. v. Taggert,* 38 Ga.App. 509, 144 S.E. 400 (1928). While plaintiff alleges that Georgia Kaolin knowingly intended to deceive plaintiff,

there is no evidence whatsoever in the record to support this assertion. Additionally, there is no conceivable explanation as to why Georgia Kaolin would have any reason to intentionally represent to MCG that Mr. White was fully covered if in fact Georgia Kaolin knew that he was not.

Plaintiff has also failed to show an issue of material fact with regard to its reasonable reliance on Georgia Kaolin's initial representations. Plaintiff was given notice on June 26, 1979, that Georgia Kaolin was retracting its original statement as to full coverage for Mr. White. Plaintiff had until July 31, 1979 to file for Medicaid assistance. MCG's failure to investigate the matter shows a lack of due diligence, negating any issue of reasonable reliance. *See Reeves*, 331 S.E.2d 589; *Blanchard v. West*, 115 Ga.App. 814, 156 S.E.2d 164 (1967). The courts in both *Reeves* and *Blanchard* granted summary judgment where the plaintiffs failed to show that their reliance on defendant's statements was justified. "The party seeking the benefit of estoppel must not only have been free from fraud, but must have acted in good faith and reasonable diligence, otherwise no equity will arise in his favor." *Tybrisa Co. v. Tybeeland Co., Inc.*, 220 Ga. 442, 139 S.E.2d 302 (1964).

■ Even assuming that plaintiff has adequately proven scienter and justifiable reliance, the misrepresentation itself was not of the nature to constitute fraud. Statements as to the nature of insurance coverage are opinions of law and cannot be the basis of a cause of action for fraud. *Marett Properties, Inc. v. Prudential Ins. Co. of America*, 167 Ga.App. 631, 307 S.E.2d 69 (1983); *Parris & Son, Inc. v. Campbell*, 128 Ga.App. 165, 196 S.E.2d 334 (1973).

Plaintiff has failed to set forth a case for actual fraud. Plaintiff argues, in the alternative, that defendant's acts constituted constructive fraud. Constructive fraud is

legal fraud, but does not require knowledge or scienter:

> Misrepresentation of a material fact, made willfully to deceive or recklessly without knowledge and acted on by the opposite party, or made *innocently and mistakenly and acted on by the opposite party, constitutes legal fraud.*

O.C.G.A. § 23-2-52 (1982) (emphasis added).

> Constructive fraud consists of any act of omission or commission, contrary to *legal or equitable duty, trust, or confidence justly reposed,* which is contrary to good conscience and operates to the injury of another.

O.C.G.A. § 23-2-51(b) (1982) (emphasis added).

■ This court concludes that the plaintiff may not rely on an allegation of constructive fraud to support an independent action for damages in tort. *Penn Mutual,* 38 Ga.App. at 512, 144 S.E. 400. Additionally, this court finds that there is no fiduciary duty between the parties in this fact situation. *See generally Clinton v. State Farm Mutual Auto. Ins. Co.,* 110 Ga.App. 417, 138 S.E.2d 687 (1964). Plaintiff has failed to prove the relationship necessary to support the availability of constructive fraud as a cause of action. Therefore, plaintiff cannot withstand defendant's motion for summary judgment with regard to defendant's original misrepresentation of full coverage for Mr. White.

B. Plaintiff has failed to prove the elements of fraud sufficient to toll the statute of limitations on its claim on the policy itself.

As a second claim, plaintiff has raised an issue concerning the interpretation of the hospitalization policy. Plaintiff and defendant dispute whether or not Mr. White was fully covered under the terms of Georgia Kaolin's group hospitalization policy.[1] The policy provides in relevant part that a $250,000 medical expense aggregate bene-

---

1. At the outset, this court notes that if, as plaintiff claims, Mr. White was fully covered under the policy, plaintiff has conceded its loss in its first claim. If Mr. White was fully covered, then Georgia Kaolin's original representation that he was fully covered was *true,* and cannot be the basis for a claim of fraud.

fit would be provided for "employees who became disabled ... on or after December 1, 1976." The policy defines a disabled employee as "an employee who, on the basis of competent medical opinion, ... is found to be (a) wholly and permanently prevented from performing the duties of any employment with the bargaining unit as a result of bodily injury or disease, either occupational or non-occupational." Therefore, an employee who became disabled after December 1, 1976 was entitled to the $250,000 aggregate benefit; an employee who became disabled before that date was not, and was subject to lower coverage under other policy provisions.

Mr. White was hospitalized on November 14, 1976 and was on temporary disability from that date until June of 1977. During that time period, he received disability pay at the rate of ⅔ of his income, and Washington National paid the miscellaneous expenses of his illness as if he were a regular employee. On June 1, 1977, Mr. White went on disability retirement and never returned to work at Georgia Kaolin. MCG contends that Mr. White did not actually become disabled until June, 1977 when he went on permanent disability as opposed to being on temporary disability. Defendant's own internal records show that Mr. White was considered a temporarily disabled but still active employee until June 1, 1977.

Georgia Kaolin contends that Mr. White became disabled on November 14, 1976, as he became ill on that date, was placed on temporary disability, and never returned to work. On November 17, 1976, Mr. White's physician wrote a letter to Georgia Kaolin recommending that Mr. White be placed on permanent disability retirement, and this, according to Georgia Kaolin, constitutes the necessary "competent medical opinion" of permanent disability.

While plaintiff's second claim does raise a valid question on policy interpretation, the claim is moot as it is barred by the statute of limitations. The policy provided that any legal action on the policy must be brought within three years and ninety days after loss was incurred (in this case, April 12, 1979). Plaintiff did not file suit until March of 1983. Time limitations contained in insurance policies are valid and enforceable in the state of Georgia, and this court must apply the Georgia law on the limitations of actions. *Smith v. Allstate Insurance Co.*, 159 Ga.App. 743, 285 S.E.2d 82 (1981); *Beck v. Georgia Farm Bureau Mutual Insurance Co.*, 146 Ga.App. 878, 247 S.E.2d 548 (1978); *Townley v. Patterson*, 139 Ga.App. 249, 228 S.E.2d 164 (1976).

Plaintiff argues that the time limitation set forth in the policy was tolled by the fraud of the defendants, claiming that the defendants received the bill for Mr. White's hospitalization, saw how expensive it was, and attempted to avoid paying it by claiming that Mr. White was entitled only to reduced coverage. Plaintiff relies on the following statute:

> If the defendant or those under whom he claims are guilty of a fraud by which the plaintiff has been debarred or deterred from bring an action, the period of limitation shall run only from the time of the plaintiff's discovery of the fraud.

O.C.G.A. § 9–3–96 (1982).

Plaintiff claims that it did not learn that Mr. White may have been fully covered under the policy until it took the deposition of a Washington National agent on August 7, 1981. Therefore, plaintiff contends that the statute did not begin to run until the fraud was discovered on that date.

■ Plaintiff has put forth no evidence to prove the degree of fraud necessary to toll the statute of limitations. Only actual fraud involving moral turpitude tolls the statute of limitations; constructive fraud does not toll the statute. *Shipman v. Horizon Corp.*, 245 Ga. 808, 267 S.E.2d 244 (1980); *Jim Walter Corp. v. Ward*, 245 Ga. 355, 265 S.E.2d 7 (1980). The fraud necessary to toll the statute must include "deceit, false representation, or other conduct involving moral turpitude", and must have the effect of deterring the plaintiff from bringing suit *Carnes v. Bank of Jonesboro*, 58 Ga.App. 193, 196, 198 S.E. 338 (1938), *aff'd* 187 Ga. 795, 2 S.E.2d 495 (1939).

■ The *only* evidence plaintiff relies on in support of its allegation of fraud involv-

ing moral turpitude is a letter from a Vice President of Georgia Kaolin to a Washington National employee stating that:

> It is my understanding that Washington National has the claim of The Medical Center of Central Georgia on Ben Doc White under advisement. As you probably know, we were instrumental in challenging this bill *because we felt that it was not reasonable and because his coverage was questionable.*

Letter from A.D. Faulk to L.F. Boucher, November 8, 1979 (emphasis added).

The letter goes on to state, "However, we also want to meet whatever reasonable obligation we may have in this matter." In light of the latter statement, it can hardly be said that this letter evidences moral turpitude on the part of Georgia Kaolin. Plaintiff has alleged fraud, but has not produced evidence sufficient to create an issue of material fact. Therefore, the claim on the policy is barred by the statute of limitations.

Defendant's motion for summary judgment is hereby GRANTED as this court finds that there are no issues of material fact and defendant is entitled to judgment as a matter of law.

Plaintiff's motion for summary judgment is hereby DENIED.