CHARLES HAVEL, Respondent-Appellant, v KELSEY-HAYES COMPANY, Appellant-Respondent.

Fourth Department, December 11, 1981

APPEARANCES OF COUNSEL

*Kernan & Kernan, P.C. (Earle Bastow* of counsel), for appellant-respondent.

*Groben, Liddy, Cardamone* and *Gilroy (Michael H. Stephens* of counsel; *Joseph E. Saunders* on the brief), for respondent-appellant.

OPINION OF THE COURT

DILLON, P.J.

On defendant's appeal, the issue presented is whether a written contract between the parties should be construed to include a promise by defendant to exercise reasonable diligence to exploit plaintiff's patented process. We hold that the contract imposed that burden but because other issues of fact remain, we affirm Special Term's denial of defendant's motion for summary judgment.

In 1967 plaintiff obtained patents on a "hot isostatic pressing" process to be used in the production of turbine discs for jet engines. Defendant is a manufacturer of turbine discs.

By agreement dated January 30, 1973, plaintiff granted to defendant an exclusive license for the use and dissemination of the patented process. Defendant agreed to pay plaintiff a percentage of the cost of superalloy powders used in the process and further agreed that plaintiff would receive 25% of all lump sum payments and 40% of all royalties paid to defendant by sublicensees. The agreement also provided for payment by defendant of minimum royalties of $20,000 per year. The minimum payment was not guaranteed, however, because plaintiff's sole right was to terminate the license on defendant's failure to make up the deficiency if plaintiff's share of the lump sum payments and royalties did not amount to $20,000 in any calendar year.

On November 18, 1974 defendant entered into a written sublicensing agreement with United Aircraft Corporation (United), a manufacturer of jet aircraft engines, under which United agreed to pay $5,300,000 to defendant over an eight-year period.[1] Through December, 1975, United paid defendant the sum of $700,000, 25% of which was paid over to plaintiff, but in June, 1977 United exercised its right of termination of the sublicensing agreement.

We are here concerned only with the first cause of action in plaintiff's complaint.[2] It alleges that United terminated the sublicense because defendant failed to perform its obligations under the sublicensing agreement, thus breaching its implied promise to plaintiff to use reasonable diligence to exploit the process. Although Special Term properly denied defendant's motion for summary judgment dismissing the first cause of action, it erred in finding that

1. A tripartite agreement among plaintiff, defendant and United was executed contemporaneously with the sublicensing agreement but bears no direct relevance to the issue on appeal.

2. Plaintiff has withdrawn his appeal from that part of Special Term's order which granted summary judgment dismissing his second and third causes of action in which he contended that his share of United's payments to defendant should have been computed at 40% rather than 25%.

there are issues of fact to be resolved on the question of whether the agreement imposes the obligation to exploit.

Initially, we note our agreement with defendant's argument that there are no inferences to be drawn from extrinsic evidence. Examinations before trial have been completed and it is acknowledged by the parties that prewriting discussions did not include the specific subject of a promise by defendant to exploit plaintiff's invention (cf. *Gluck v Amsterdam Print. & Litho Corp.,* 77 AD2d 722, affd 53 NY2d 737). If the promise was made, it must be found from the writing.[3]

It is a primary rule of contract construction that where the terms of a written agreement are clear and unambiguous, the intent of the parties must be drawn from the contract language *(Zion v Kurtz,* 50 NY2d 92, 105; *Laba v Carey,* 29 NY2d 302, 308; *Benderson Dev. Co. v Schwab Bros. Trucking,* 64 AD2d 447, 456). This is so because "it is not the function of the courts to remake the contract agreed to by the parties, but rather to enforce it as it exists" *(Rowe v Great Atlantic & Pacific Tea Co.,* 46 NY2d 62, 69). In achieving that end, due regard must be given the overriding principle that every contract contains an implied covenant of good faith performance and fair dealing *(Van Valkenburgh, Nooger & Neville v Hayden Pub. Co.,* 30 NY2d 34, 45; *Kirke La Shelle Co. v Armstrong Co.,* 263 NY 79, 87). Moreover, that a specific promise has not been expressly stated does not always mean that it was not intended. "[T]he undertaking of each promisor in a contract must include any promises which a reasonable person in the position of the promisee would be justified in understanding were included" (11 Williston, Contracts [3d ed], § 1295, p 37).

The principles thus stated are of particular consequence where the essence of the contract is the grant of a license under which the fate of the subject matter is placed exclusively with the licensee for the purpose of exploitation and profit. Implicit in such an arrangement is the licensee's obligation to exploit the license *(Wood v Duff-Gordon,* 222

---

3. Even if we were to conclude that the writing is ambiguous on this issue, in the absence of any tender of extrinsic evidence to resolve the ambiguity, the question is one of law to be determined by the court. *(Olson Enterprises v Agway, Inc.,* 55 NY2d 659.)

NY 88; *Wilson v Mechanical Orguinette Co.,* 170 NY 542; *Guardino Tank Processing Corp. v Olsson,* 89 NYS2d 691). Significantly, given the policy consideration that the use of patents, not their suppression, serves the public good, the promise will more likely be found where the subject of the exclusive license is patented (see *Eastern Elec. v Seeburg Corp.,* 427 F2d 23, 25; *Mechanical Ice Tray Corp. v General Motors Corp.,* 144 F2d 720, 727 [FRANK, J., dissenting in part]; Comment, 49 Mich L Rev 738, 754; cf. *Rowe v Great Atlantic & Pacific Tea Co., supra).*

Turning to the comprehensive contract under review, the grant of the exclusive license is made in paragraph "3" in these words: "LICENSE. Licensor hereby grants to Licensee an exclusive license, with the right to grant sublicenses, to use the Licensed Process throughout the world, including an exclusive license, with the right to grant sublicenses, throughout the world, under the LICENSED PATENTS to make, to have made, to use and to sell the apparatus, articles and compositions and to practice and have practiced the processes covered thereby."

Too numerous to recite are the other provisions relating to rights and obligations of the parties in contemplation of the expansive use of the patented process by defendant and by sublicensees. It is said, however, that the finding of a promise of exploitation is precluded by the provision for the payment by defendant of minimum royalties. While it is true that a guaranteed stipulated minimum payment is relevant in determining the intent of the parties on the question of whether the covenant should be implied (see *Vacuum Concrete Corp. v American Mach. & Foundry Co.,* 321 F Supp 771; cf. *Tuttle v Grant Co.,* 5 AD2d 370, 379-380 [HALPERN, J., dissenting], revd 6 NY2d 754; but see *Genet v President, etc., of Delaware & Hudson Canal Co.,* 136 NY 593), the relevant clause here is of little or no consequence because, as previously noted, it doesn't obligate defendant to the payment of minimum royalties (cf. *Long Is. R.R. Co. v Northville Inds. Corp.,* 41 NY2d 455, 459, 462). Plaintiff's only recourse for defendant's failure to complete the annual minimum payment was to withdraw the license.

Nor does the "ENTIRE UNDERSTANDING" clause of the contract bear upon the issue. It provides: "This Agreement constitutes the entire understanding between the parties and it is specifically understood that there are no other warranties, covenants or agreements, expressed or implied, between the parties, or any understanding other than those expressly set forth herein." The salutary purpose of that language is to preclude consideration of matters extrinsic to the agreement. It is of no relevance if the promise, albeit imperfectly expressed, is implicit in the contract as written.

Reading the contract as a whole, the conclusion is inescapable that the clear purpose of the license was to achieve the widest possible use of the process "throughout the world". It is but literal formalism, and no more, which supports the claim that the precise promise of exploitation is lacking. That promise is so interwoven in the whole writing as to make the agreement "'instinct with an obligation'" to use due diligence to exploit the process *(Wood v Duff-Gordon,* 222 NY 88, 91, *supra,* quoting *McCall Co. v Wright,* 133 App Div 62).

The order should be affirmed in accordance herewith.

CALLAHAN, DOERR, DENMAN and SCHNEPP, JJ., concur.

Order unanimously affirmed, without costs.