## TOP OF THE TRACK ASSOCIATES

v.

## LEWISTON RACEWAYS, INC.

Supreme Judicial Court of Maine.

Argued Nov. 4, 1994.

Decided Feb. 23, 1995.

Ronald P. Lebel (orally), Rocheleau, Fournier & Lebel, P.A., Lewiston, for plaintiff.

Martin I. Eisenstein (orally), Peter D. Lowe, Brann & Isaacson, Lewiston, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, RUDMAN, DANA, and LIPEZ, JJ.

GLASSMAN, Justice.

Top of the Track Associates [1] (TOTA) appeals from a judgment entered in the Superior Court (Androscoggin County, *Alexander, J.*) in favor of Lewiston Raceways, Inc. (Raceways) on TOTA's complaint against Raceways for a breach of contract and unjust enrichment. We vacate the summary judgment on the breach of contract claim and affirm the judgment on the unjust enrichment claim.

The record reveals the following undisputed facts: In 1983, Raceways sought investors to upgrade concession facilities adjacent to its harness racing track in Lewiston as a part of its ongoing effort to attract a larger audience to the track and to increase the number of race dates awarded to it by the State Harness Racing Commission (the Commission). A group of local business persons formed a limited partnership, TOTA, and undertook to design the new restaurant facility. TOTA entered into negotiations with Raceways to build and manage the upgraded facility.

---

1. Top of the Track, Inc., a general partner of Top of the Track Associates, with the consent of Lewiston Raceways, Inc., was a sublessee and managed the restaurant facilities. Top of the Track, Inc., was named as a plaintiff in this action but did not join in the appeal.

On October 5, 1983, Raceways and TOTA executed a ten-year lease. The agreement provided that: TOTA would pay for and construct the improvements to the clubhouse; Raceways would own the improvements on completion of construction and TOTA would operate the restaurant facilities and have the exclusive right to operate food and drink concessions on the entire 57–acre parcel comprising Raceways, except the paddock area, when the track was open for racing. In lieu of a fixed rent, TOTA was to pay Raceways a percentage of its gross receipts from the concessions and restaurant. The percentage of gross receipts payable to Raceways was to escalate gradually over the term of the lease.

The lease, *inter alia,* also provided the following: TOTA agreed to maintain the restaurant and food and drink concessions services during all racing days in the racing season. Failure to operate the facilities for a period in excess of eight consecutive racing days would constitute a default by TOTA. Raceways reserved the right to terminate and cancel the lease if TOTA lost its liquor license for failure to comply with the liquor laws. TOTA's failure to pay the percentage of gross receipts to Raceways within the time provided in the lease entitled Raceways to terminate the lease and to enter the premises. Either party could terminate the lease if the clubhouse or other areas of the track were condemned, thereby making it economically infeasible to operate the restaurant and concessions. If Raceways conveyed its interest in the race track or clubhouse or assigned the lease, its obligations would cease and the new lessor or assignee would be bound by the terms of the lease.

The lease also contained an integration clause that provided in pertinent part:

This Lease and any duly executed riders attached hereto constitute the only agreement between the parties relative to the Leased Premises and no oral statements and no prior written matter not specifically incorporated herein shall be of any force or effect. In entering this Lease, the Tenant relies solely upon the representations and agreements contained herein.

In late 1983, TOTA began construction of the clubhouse improvements. TOTA specifi-cally tailored the design of the restaurant to accommodate the patrons of the race track. The restaurant had several seating levels overlooking the race track, and TOTA installed television monitors to allow the patrons to watch the races. Because there would be a single sitting for dinner, the kitchen was equipped to prepare a large number of meals at one time. TOTA's capital investment in the leasehold improvements was approximately $425,000, and it spent an additional $275,000 for the equipment and furnishings.

In 1984 and 1988, the parties amended the lease to extend the lease period. TOTA sought the amendments because it needed an additional period of time to recoup its investment. The final amendment extended the lease term to sixteen years with the escalation of the percentage of gross receipts payable to Raceways extended accordingly.

Raceways continued to seek racing dates from 1983 to 1989 and made several capital improvements to the track and stalls. During this time, with the consent of Raceways as provided in the lease, TOTA made several attempts to operate the restaurant in the off-season period. Such attempts were unsuccessful financially, primarily because the building was not conducive to general restaurant operation. In 1990, Raceways submitted its annual application to the Commission to obtain that season's race dates. By February 1990, the usual start of the racing season, the Commission had not yet assigned race dates. Without notifying TOTA, Raceways withdrew its application and subsequently ceased operating the race track. With the track no longer drawing patrons to the restaurant, TOTA was forced to close the clubhouse and go out of business. Raceways has since removed the track and begun developing the site for various commercial uses.

TOTA filed a multi-count complaint against Raceways alleging, *inter alia,* that by unilaterally withdrawing its application for racing dates Raceways breached an implied term in the contract that for the lifetime of the lease Raceways would operate the track as a racing track and annually seek racing dates, and that Raceways was unjustly enriched by acquiring ownership of the improvements made by TOTA. Raceways moved to dismiss the

complaint pursuant to M.R.Civ.P. 12(b)(6) and subsequently moved for a summary judgment on all counts in the complaint. The trial court granted a summary judgment in favor of Raceways on TOTA's claim that Raceways had breached an implied term of the lease. The court reasoned that the express integration clause contained in the lease precluded the existence of any implied term. After a jury-waived trial, based on the court's finding that TOTA had failed to meet its burden to establish that the improvements were of any benefit to Raceways after it ceased operating the track, a judgment was entered in favor of Raceways on TOTA's remaining claim that Raceways was unjustly enriched.

■ TOTA first contends that because there exists a genuine issue of material fact, the trial court erred in granting a summary judgment in favor of Raceways on TOTA's claim for the breach of an implied term in the lease. It argues that although the parties understood there was no assurance that the Commission would continue to award racing dates to Raceways, the contract impliedly obligated Raceways to seek such dates during the lifetime of the lease. TOTA also argues that Raceways understood that its unilateral decision to withdraw its application for racing dates and its subsequent closing of the track not only defeated the purpose of the lease agreement but also undermined its spirit and the intent of the parties at the time the lease was executed.

Raceways contends, as it did before the trial court, that the integration clause bars the implication of any additional duties and obligations not expressly provided in the lease; further, that Raceways never intended to promise to operate the track for the duration of the lease and the lack of such intent by Raceways precluded the trial court from implying such an obligation. Hence, Raceways argues the trial court properly granted its motion for a summary judgment in its favor on TOTA's claim for the breach of their contract.

A summary judgment is appropriate if there is no genuine issue as to any material fact and if the moving party is entitled to a judgment as a matter of law. M.R.Civ.P.

56(c). We examine the evidence in the light most favorable to TOTA, against whom the summary judgment was granted, to determine if the trial court committed an error of law. *Dube v. Homeowners Assistance Corp.,* 628 A.2d 1040, 1041 (Me.1993); *Chasse v. Mazerolle,* 622 A.2d 1180, 1182 (Me.1993).

From the outset, we recognize that there is no express provision in the lease that obligates Raceways throughout the term of the lease to seek racing dates and to operate the track. The lack of an express term, however, does not preclude the existence of an implied obligation. "[A] contract includes not only the promises set forth in express words, but, in addition, all such implied provisions as are indispensable to effectuate the intention of the parties and as arise from the language of the contract and the circumstances under which it was made." *Sacramento Nav. Co. v. Salz,* 273 U.S. 326, 329, 47 S.Ct. 368, 369, 71 L.Ed. 663 (1927).

The implication of a contract term is only justified "when the implied term is not inconsistent with some express term of the contract and when there arises from the language of the contract itself, and circumstances in which it was entered into, an inference that it is absolutely necessary to introduce the term to effectuate the intention of the parties." 11 *Williston on Contracts,* § 1295 (1968) (citations omitted). *Higginbottom v. Thiele Kaolin Co.,* 251 Ga. 148, 304 S.E.2d 365, 366 (1983); *Davis v. Professional Business Servs, Inc.,* 712 P.2d 511, 514 (Idaho 1985); *Pathology Consultants v. Gratton,* 343 N.W.2d 428, 434 (Iowa 1984); *Castle v. McKnight,* 116 N.M. 595, 866 P.2d 323, 327 (1993). In establishing the intent of the parties at the time the contract was executed "the undertaking of each promisor in a contract must include any promises which a reasonable person in the position of the promisee would be justified in understanding were included." 11 *Williston on Contracts,* § 1295 (1968). We have previously stated that "our long established rule of law in this State [is] that the paramount principle in the construction of contracts is to give effect to the intention of the parties as gathered from the language of the agreement viewed in the light of all the circumstances under which it

**1296**

was made.... Such intention must be gathered from the written instrument, construed in respect to the subject matter, the motive and purpose of making the agreement, and the object to be accomplished." *Baybutt Constr. Corp. v. Commercial Union Ins. Co.,* 455 A.2d 914, 919 (Me.1983).

■ The courts have long recognized an implied covenant in contracts that neither party shall by its unilateral action destroy or injure the right of the other party to receive the fruits or benefits of the contract or render performance impossible. *See Kendall v. Ernest Pestana, Inc.,* 40 Cal.3d 488, 220 Cal. Rptr. 818, 825, 709 P.2d 837, 844 (1985); *Cavalier County Memorial Hosp. Ass's v. Kartes,* 343 N.W.2d 781, 784 (N.D.1984); *Carmichael v. Adirondack Bottled Gas Corp. of Vt.,* 161 Vt. 200, 635 A.2d 1211, 1216 (1993); 3 *Corbin on Contracts* § 561 (1960).[2] In construing a contract, an interpretation should be avoided that would render meaningless any particular provision in the contract. *See, e.g., Two Guys from Harrison–N.Y., Inc. v. S.F.R. Realty Associates,* 63 N.Y.2d 396, 482 N.Y.S.2d 465, 468–69, 472 N.E.2d 315, 318 (N.Y.1984). *See also Chergosky v. Crosstown Bell, Inc.,* 463 N.W.2d 522, 526 (Minn.1990) (avoiding interpretation of contract that would render provision meaningless); *Winn v. Aleda Constr. Co., Inc.,* 227 Va. 304, 315 S.E.2d 193, 195 (1984) (presuming that parties have not used words aimlessly). As a matter of contract law, a term that is implied in a contract has the same legal effect as an express term. 3A *Corbin on Contracts,* § 653 (1960). *See also Havel v. Kelsey–Hayes Co.,* 83 A.D.2d 380, 445 N.Y.S.2d 333, 336 (1981) ("The salutary purpose of [an integration clause] is to preclude consideration of matters extrinsic to the agreement. It is of no relevance if the promise, albeit imperfectly expressed, is implicit in the contract as written.").

■ Applying these principles to the instant case, we conclude that Raceways' con-

tention that the integration clause as a matter of law precluded the implication of any additional obligation in the lease is without merit. The record discloses that there exists a genuine issue of material fact as to the intention of the parties relative to the continued operation of the track for the duration of the lease. Although the interpretation of unambiguous terms of a contract is a question of law, the intent of the parties and the purpose of the contract are questions for the factfinder. *See, e.g., Dehahn v. Innes,* 356 A.2d 711 (Me.1976) (factfinder to determine purport and meaning of contract). Because the integration clause does not bar extrinsic evidence of the existence of an implied term and there exists a genuine issue of material fact as to the intent of the parties, the trial court erred in granting a summary judgment in favor of Raceways on TOTA's claim for a breach of contract.

■ TOTA also contends that the trial court erred in entering a judgment in favor of Raceways after a non-jury trial on TOTA's claim that Raceways was unjustly enriched. We have previously stated that "unjust enrichment describes recovery for the value of the benefit retained when there is no contractual relationship, but when, on the grounds of fairness and justice, the law compels performance of a legal and moral duty to pay." *A.F.A.B., Inc. v. Town of Old Orchard Beach,* 639 A.2d 103, 105 n. 3 (Me.1994). Here, because the contract between the parties forecloses the maintenance of TOTA's claim against Raceways for unjust enrichment, we affirm the judgment in favor of Raceways. *See Bakal v. Weare,* 583 A.2d 1028, 1030 (Me.1990) (judgment affirmed because another reason existed why defendant entitled to judgment as a matter of law).

The entry is:

The judgment for the defendant on the plaintiff's claim for unjust enrichment affirmed.

---

**2.** *But see* 3 *Corbin on Contracts* § 561 (1994 Supp.) in which it is noted that section 561 deals with two distinct classes of implied promises; quasi-contracts where language is entirely lacking and a situation where there are express promises "but it is claimed that they are inadequate to express the full intention of the parties or to insure that their reasonable expectations will be carried out, or for some other reason insufficient to achieve justice." Partly because of the influence of the Uniform Commercial Code, some courts have begun to talk of "good faith" rather than "implied covenants." To date we have not adopted this approach.

Summary judgment in favor of defendant on plaintiff's claim for breach of contract vacated. Remanded for further proceedings consistent with the opinion herein.

All concurring.