STATE OF MAINE

Cumberland, ss

BUSINESS AND CONSUMER COURT

Location: Portland

20 Thames Street, LLC, et al
            Plaintiff

v.

Ocean State Job Lot of Maine, LLC
            Defendants

)
)
)
)
)
)
)
)
)
)
)

Docket No. BCD- SA-2018-01 ✓

## ORDER ON PLAINTIFFS' MOTION FOR ADDITIONAL FINDINGS OF FACT AND TO AMEND JUDGMENT AND ON DEFENDANT'S APPLICATION FOR AWARD OF ATTORNEY'S FEES AND COSTS

1. Plaintiffs' Motion for Additional Findings of Fact and to Amend Judgment is DENIED. The Court considered conflicting testimony at trial which it then resolved in making the factual findings set forth in the Judgment dated August 14, 2018. Having considered the submissions of the Parties on this Motion, the Court does not find any reason to disturb its factual findings or to make additional findings.

2. The Court hereby extends the previously set 14-day deadline and finds that Defendant's Application for Attorney's Fees and Costs has been timely filed and may be considered. The Court has reviewed Defendant's Application, along with Plaintiffs' opposition and Defendant's reply. The Court has also reviewed the affidavit of Attorney Crouter submitted by Defendant and the affidavit of Attorney Chamberlain submitted by Plaintiffs. The Court finds Attorney Crouter's affidavit persuasive and the affidavit of Attorney Chamberlain non-persuasive.

   While Attorney Crouter has extensive commercial litigation experience representing both plaintiffs and defendants, Attorney Chamberlain primarily represents plaintiff landlords in residential proceedings in high volume District Court dockets. This is not to diminish Mr. Chamberlain's experience and expertise in that area, but the Court finds Mr. Crouter's experience to be more relevant in this

1

proceeding where a judgment for Plaintiffs could have cost the Defendant losses of approximately $4.5 million.

While Plaintiff tries to characterize this case as involving a simple summary proceeding, it was in reality anything but simple or summary. In 11 years of presiding over FED actions in District Court, the Court has seen nothing approaching this level of complexity and degree of potential loss to the Defendant. Removal to the Business & Consumer Docket was completely appropriate. The Court would not have accepted the case for transfer if that were not the case.

There was credible evidence at trial that Plaintiffs attempted to use a hyper technical interpretation of the lease to try to evict Defendant because Plaintiffs did not like the terms of the lease they had assumed (derided as a "tenants" lease by Mr. Cohen) when they purchased the shopping center. Having almost immediately served a notice of termination and filed the FED action instead of reasonably trying to resolve the issue with Defendant, thereby placing Defendant in "Bet-the company" litigation, Plaintiffs lack credibility in now suggesting that Defendants should not have mounted the defense that proved successful, but, rather, should have put on a briefer "summary" defense.

Based on Attorney Crouter's credible and persuasive affidavit, the Court subtracts $5,564.50 in attorneys' fees from the amount sought by Defendant. Otherwise the Court finds the hourly rates and the time and costs expended to be reasonable in considering the factors identified by the Law Court in *Mancini v. Scott*, 2000 ME 19, 744 A.2d 1057. Pursuant to Paragraph 38(m) of the Parties' lease, the Court awards Defendant attorneys' fees of $206,076.00 and costs of $10,575.06, for a total of $216,651.06.

The ORDER shall be:

Plaintiff's Motion for Additional Findings of Fact and to Amend Judgment is DENIED;

Defendant's Application for Attorneys' Fees and Costs is GRANTED. The Court awards Defendant, and grants judgment against Plaintiffs, for a total of $216,651.06 in attorneys' fees and costs, execution to issue.

Pursuant to M.R. Civ. P. 79(a), the clerk is hereby directed to incorporate this order by reference in the docket.

Dated    9/20/18

_____
Richard Mulhern
Judge, Business and Consumer Court

STATE OF MAINE                          BUSINESS AND CONSUMER COURT
CUMBERLAND, ss.                         DOCKET NO. BCD-SA-2018-01✓

20 THAMES STREET, LLC, et al.,          )
                                        )
            Plaintiffs,                 )
                                        )
v.                                      )        JUDGMENT
                                        )
OCEAN STATE JOB LOT OF MAINE            )
2017, LLC,                              )
            Defendant,                  )

This matter comes before the Court on Plaintiffs 20 Thames Street, LLC ("Thames Street")

and 122 PTIP, LLC's Complaint for forcible entry and detainer. *See* M.R. Civ. P. 80D. Service on

the Defendant, Ocean State Job Lot ("OSJL") of Maine 2017, LLC was properly effectuated. A

hearing was held on June 27-28, 2018 and July 16, 2018. All parties appeared and were represented

by counsel. Plaintiffs are represented by Adam Taylor, Esq. and Andre Duchette, Esq.; Defendants

are represented by Seth Brewster, Esq., Erica Johanson, Esq., and Micah Smart, Esq.

## PROCEDURAL POSTURE

·Plaintiffs filed their one-count Complaint for forcible entry and detainer with the Portland

District Court on May 7, 2018. The matter was thereafter accepted by the Business and Consumer

Court on May 22, 2018 on Defendant's application for transfer. Plaintiffs' objected to the transfer

in a letter to the Court dated that same day and received May 24.

The Court held a teleconference on May 29, 2018; on June 4, 2018, the Court ordered the

parties to file and exchange trial memoranda by June 25, 2018. Trial was scheduled for June 27-

28, 2018. Two days proved insufficient and on June 28 an additional half-day of trial was

1

scheduled for July 16, 2018. The parties were ordered to file written closing arguments simultaneously by July 30, 2018.

## FACTS

Plaintiffs are Maine limited liability companies with principal places of business in Cumberland County, Maine and they are the owners of a commercial property located at 251 U.S. Route 1, Falmouth, Maine (the "Property"). Defendant OSJL of Maine 2017 is a Maine limited liability company[1] that occupies a commercial retail space at the Property pursuant to a lease agreement dated August 3, 2017 (the "Lease"). The Lease was originally entered into between OSJL and Louis Vinios, trustee of Falmouth Realty Associates, a Massachusetts trust. The Lease sets forth an initial ten-year term and three renewal options of five years each. The Lease also sets forth the rent to be paid during the initial term and each renewal term. (Pl's Ex. 4.) OSJL opened its store in the Property on November 18, 2017. On March 23, 2018, Plaintiffs purchased the Property. That same day, Patricia Dugas, lease administrator with Commercial Properties Management ("CPM"), sent correspondence via certified mail to OSJL to notify it "that effective immediately, due to the sale of the Property, [its] Lease with Falmouth Realty Association [had] been assigned to [Plaintiffs]." (Pl's Ex. 5; Dugas, 6/27/2018, 195:14-17.) The letter attached an assumption of lease document. The letter was copied to OSJL's Rhode Island attorney, Andrew Sholes. (Pl's Ex. 5.) On March 28, 2018, Patricia Rose, real estate administration manager with OSJL, sent a reply email to Ms. Dugas requesting a Form W-9 and ACH payment information. (Pl's Ex. 6.) Ms. Dugas responded on April 2 with the requested information. Ms. Dugas also

---

[1] There is limited evidence in the record as to the relationship between OSJL of Maine 2017 and OSJL. John Conforti, CFO of OSJL, testified that OSJL of Maine 2017 is an asset of OSJL, which actually negotiated the Lease (through Mr. Conforti) and guarantied the Lease (through Ocean State Jobbers, Inc., which presumably is the corporation that owns OSJL). This Order uses "OSJL" to refer to both OSJL of Maine 2017, LLC and the entity generally.

2

informed Ms. Rose that Plaintiffs were increasing the monthly real estate tax escrow and notifying Ms. Rose of a problem with the fire alarm system. Between April 4 and April 18, Ms. Dugas corresponded with multiple representatives from OSJL via email regarding repairs to the fire alarm system as well as the roof. (Pl's Ex. 12.)

On April 10, 2018, Ms. Dugas sent a letter to OSJL via overnight mail attaching an estoppel certificate and subordination agreement ("SNDA") for its "review and execution." (Pl's Ex. 7.) The letter requested that OSJL "promptly execute, *notarize*, and return these documents within 10 days in accordance with Section 27 and 29 of the Lease." (Pl's Ex. 7 (emphasis in original).) The letter enclosed a pre-paid overnight envelope. (Pl's Ex. 7.) The letter also invited OSJL to contact Ms. Dugas directly in the event OSJL had any questions and provided her phone number and email address. As noted above, some of the email communications between Ms. Dugas and OSJL regarding the malfunctioning fire alarm and roof repairs occurred after April 10, *i.e.* after OSJL had received the letter and request. (*See* Pl's Ex. 12.)

Ms. Rose initially attempted to call Ms. Dugas on April 17, 2018 to discuss the April 10 correspondence and request for estoppel certificate. (Rose, 6/28/2018, 48:24-25.) Ms. Dugas returned the call on April 18, 2018. (Rose, 6/28/2018, 48:24-49:1.) Ms. Dugas testified that she "believe[d] [she] received a phone call on the eighteenth" from Ms. Rose. (Dugas, 6/27/2018, 208:3-8, 231:7.) Regardless, the Court finds that Ms. Rose initiated the original communication with Plaintiffs through her phone call to Ms. Dugas. Ms. Rose told Ms. Dugas that on the advice of her attorney, OSJL needed to receive a signed memorandum of lease before OSJL could process the estoppel certificate/ SNDA request. (Dugas, 6/27/2018, 208:24-209:7; Rose, 6/28/2018, 49:7-18.) Ms. Dugas asked Ms. Rose to direct her to the provision of the lease that allowed Ms. Rose to take this position; the two women then reviewed the lease. (Dugas, 6/27/2018, 209:3-7; Rose,

3

6/28/2018, 49:10-13.) Ms. Dugas remembers the upshot of the conversation being that Ms. Rose conditioned return of the estoppel certificate and SNDA on the receipt of the memorandum of lease, that "that was the point of the phone call." (Dugas, 6/27/2018, 212:15-17.) Ms. Rose remembers the conversation slightly differently. She testified that Ms. Dugas asked her whether OSJL was "refusing to sign the estoppel and SNDA, and I [Ms. Rose] said that's not the case; the best thing to do is to reach out to . . . Attorney Sholes." (Rose, 6/28/2018, 49:13-16.) Ms. Rose testified that she then gave Ms. Dugas Attorney Sholes's contact information "and [Ms. Dugas] said that she or their attorney would be reaching out to Mr. Sholes." (Rose, 6/28/2018, 49: 16-22.) On cross-examination Ms. Dugas admitted that she "may have" told Ms. Rose that Ms. Dugas or Plaintiffs' attorney would get in touch with Mr. Sholes. (Dugas, 6/27/2018, 240:14, 24.) However, both women testified consistently that Ms. Rose did not raise any issues with respect to the content of the proposed estoppel certificate provided by Plaintiffs. (Dugas, 6/27/2018, 216:21; Rose, 6/28/2018, 49:7-50:6, 74:17-75:20.) Neither woman testified that Ms. Dugas reminded Ms. Rose of the ten-day deadline or mentioned that it was only two or three days away, although both women testified that they were aware that eight days had passed since OSJL had received the request for an estoppel certificate from Plaintiffs. (Dugas, 6/27/2018, 211:14; Rose, 6/28/2018, 73:17.)

Based on the testimony the Court finds as follows: 1. that Ms. Rose called Ms. Dugas to discuss Plaintiffs' request for estoppel certificate and OSJL's pending request for a memorandum of lease, 2. that Ms. Dugas told Ms. Rose that she or Plaintiffs' attorney would follow up with Mr. Sholes to discuss both issues, 3. that Ms. Dugas did not mention the ten-day deadline or that it was only two or three days away, and 4. that Ms. Rose did not express a refusal on the part of OSJL to sign the estoppel certificate but did insist that Ms. Dugas or Plaintiffs' attorney call Mr. Sholes to discuss the request.

4

Rather than promptly contacting Attorney Sholes so that there could be a discussion about the request for a signed estoppel certificate, Plaintiffs took no action over the next week until April 25, 2018, when Attorney Wendy Paradis on behalf of Plaintiffs sent OSJL a notice of default and termination. (Pl's Ex. 8.) This was fifteen days after the April 10 request. On April 27, 2018, Plaintiff received an estoppel certificate from OSJL. (Pl's Ex. 9.) This estoppel certificate was unacceptable to Plaintiffs. (Cohen, 6/27/2018, 89:1-92:15.) On May 3, 2018, Mr. Sholes sent a position letter to Ms. Paradis informing her that OSJL was disputing the notice of default and termination and otherwise attempting to repair the parties' "bumpy start to their relationship." (Pl's Ex. 11.) The letter does not address the proposed estoppel certificate provided by Plaintiffs. (*See* Pl's Ex. 11.) Plaintiffs did not reply to this letter and instead filed the instant lawsuit.

## ANALYSIS

The issue in this case is whether OSJL's failure to return the form of estoppel certificate provided by Plaintiffs within ten days after Plaintiffs' request constitutes a non-curable default under the lease that entitles Plaintiffs to terminate the lease and whether Plaintiffs are therefore "entitled to the immediate possession of the [Property]." *See Tozier v. Tozier*, 437 A.2d 645, 647 (Me. 1981) ("an action of 'forcible entry and detainer is not a plenary action to quiet title to land but is, rather, a summary proceeding to decide who is entitled to the immediate possession of land'") (quoting *Bicknell Mfg. Co. v. Bennett*, 417 A.2d 414, 421 (Me. 1980)). *See also* 14 M.R.S. §§ 6000-6005. Section 29 of the Lease, titled "Estoppel Certificate," provides as follows:

Each party agrees, from time to time, within 10 days after request of the requesting party, to execute and deliver to the requesting party, or the requesting party's designee, any estoppel certificate requested by the other, stating, if true, that this Lease is in full force and effect, the date to which rent has been paid, that the

5

requesting party is not in default hereunder (or specifying in detail the nature of the requesting party's default), the termination date of this Lease and such other matters pertaining to this Lease as may be reasonably requested by the requesting party. Each party's obligation to furnish each estoppel certificate in a timely fashion is a material inducement for each party's execution of this Lease. No cure or grace period provided in this Lease shall apply to each party's obligations to timely deliver an estoppel certificate.

(Pl's Ex. 4 at 21.) The Court has previously concluded that the language of this provision is unambiguous with regards to its timing requirements: by its plain language, a "party's obligation to furnish each estoppel certificate in a timely fashion" refers back to the "within 10 days after request of the requesting party." Any other construction of the term "timely fashion" would render the "10 day" language surplusage. (Court, 6/27/2018, 11:2-9.) *See Top of the Track Assocs. v. Lewiston Raceways*, 654 A.2d 1293, 1296 (Me. 1995) ("In construing a contract, an interpretation should be avoided that would render meaningless any particular provision in the contract.").

However, in ruling on that issue, the Court noted that if there was anything in the proposed estoppel certificate sent from the Plaintiffs to Ocean State that was not true, that Plaintiffs may not be able to enforce the ten-day period under section 29 of the Lease. (Court, 6/27/2018, 20:17-20.) In other words, Plaintiffs are required to furnish a true and accurate proposed estoppel certificate because this brief period would allow the requested party only enough time to review, sign, and return the document. Ten days would be insufficient time to allow for discussions or negotiations. (Court, 6/26/2018, 20:22-25.)

The Court now finds as a factual matter that the proposed estoppel certificate provided by Plaintiffs to OSJL on April 10, 2018 was not entirely true. The Court finds that the proposed estoppel certificate included at least three factual inaccuracies:

6

1. Paragraph three of Plaintiffs' estoppel certificate asks OSJL to state and declare, under oath, that "The Lease has not been modified or amended except by the following documents (if none, so state): NONE." (Pl's Ex. 7.) In fact, the "First Amendment to Lease" was entered into between OSJL and Falmouth Realty Associates on October 31, 2017, to modify the Lease's terms related to pylon signs. (Def's Ex. 42.)

2. Paragraph twelve of the estoppel certificate asks OSJL to state and declare, under oath, that "Tenant has not assigned, sublet, transferred, hypothecated, or otherwise disposed of its interest in the Lease and/or Demised Premises, or any part thereof." (Pl's Ex. 7.) In fact, OSJL had sublet a part of the Property under the Lease to Planet Fitness. (Def's Ex. 65.)

3. Paragraph thirteen of the estoppel certificate asks OSJL to state and declare, under oath, that "Neither the Lease, nor any obligations of Tenant thereunder, have been guaranteed by any person or entity, except as follows (if none, so state): NONE." In fact, the Lease was guaranteed by Ocean State Jobbers, Inc. (Def's Ex. 62.)

Section 29 of the Lease specifies only four statements that a party may require the other to agree to without qualification: "[1] that this Lease is in full force and effect, [2] the date to which rent has been paid, [3] that the requesting party is not in default hereunder (or specifying in detail the nature of the requesting party's default),[and] [4] the termination date of this Lease[.]" (Pl's Ex. 4 at 21.) A party may request additional statements relating to "such other matters pertaining to this Lease as may be reasonably requested by the requesting party." The Plaintiffs' estoppel certificate requested of OSJL consists of twenty-one paragraphs, begging the question of whether the additional seventeen requested statements are all "reasonable requests." While not necessarily untrue or inaccurate, the Court finds that several of the requests made in the estoppel certificate provided by Plaintiffs were not reasonable to the extent that they required OSJL to either swear to

7

things that it had no knowledge of or would have given OSJL pause to swear to without discussion because they could arguably amount to a waiver of rights under the Lease or amendment of the Lease:

1. Paragraph seven of the estoppel certificate asks OSJL to state and declare, under oath, that "all items of an executory nature relating thereto to be performed by the Landlord have been completed, including, but not limited to, completion of construction thereof (and all other improvements required under the Lease) in accordance with the terms of the Lease . . . . Landlord has paid in full any required contribution toward work to be performed by Tenant under the Lease, except as follows (if none, so state): NONE." However, a pending dispute regarding the condition of the building roof remained unresolved. Curiously, Plaintiffs point to an email from Ms. Hudson-Grossi as evidence that the roof issue was resolved—even though the email is dated April 17. (Pl's Ex. 12.) The proposed estoppel certificate was sent to OSJL on April 10. (Pl's Ex. 7.)

2. Paragraph nine of the estoppel certificate defines "Default" as "default *or event that with the passage of time or notice would constitute a default*." (Pl's Ex. 7 (emphasis added).) Paragraph ten asks OSJL to state and declare, under oath, that "To the best of Tenant's knowledge, no Default on the part of Landlord exists under the Lease in the performance of the terms, covenants, and conditions of the Lease required to be performed on the part of Landlord." (Pl's Ex. 7.) As noted above, there was a pending dispute with regards to roof repair. Plaintiffs' position is that OSJL was responsible for the costs of repair to the roof under the Lease. Regardless of who prevails on that ancillary issue, the Court finds that the previous landlord had performed roof repairs at its own cost. (Def's Ex. 47-49; Churchill, 6/28/2018, 245:22-25.) Therefore, under the expansive definition of "default" in the proposed estoppel certificate,

8

it would be unreasonable to expect OSJL to affirm under oath that the condition of the roof was not an issue that with proper notice could ripen into a default on the part of the landlord. This was precisely the kind of assertion that OSJL was uncomfortable swearing to because of its potentially preclusive effect.

3. Paragraph nineteen of the estoppel certificate asks OSJL to state and declare, under oath, that it "understands and acknowledges" a host of details relating to Plaintiffs' financial relationship with KeyBank National Association and OSJL's obligations to KeyBank in the event that Plaintiffs defaulted on their loan. However, OSJL could not swear to any of the details regarding Plaintiffs' financial relationship with KeyBank on their word alone. Furthermore, there was nothing in the Lease regarding OSJL's obligations to KeyBank. (Sholes, 6/28/2018, 141:7-12.)

These three items may ultimately have proven uncontroversial,[2] but Plaintiffs could not have reasonably expected OSJL to sign and return the estoppel certificate without discussion of the assertions contained therein. Plaintiffs argue that section 29 puts the burden on OSJL to initiate these discussions within the ten-day period, but section 29 imposes no such burden. By its plain language, section 29's ten-day period imposes a burden on the requested party "to execute and deliver to the requesting party . . . any estoppel certificate requested by the other . . . *if true*." (Pl's Ex. 4 at 21 (emphasis added).) Ten days is an insufficient period of time to do anything other than "send it back." The Court agrees.

Plaintiffs' position that OSJL was required to send back "any" estoppel certificate they requested of OSJL omits the conditions that are in the plain language of section 29: that the estoppel certificate provided is "true" and that any assertions beyond the four specifically

---

[2] In fact, had Ms. Dugas or Plaintiffs' counsel followed up with OSJL's attorney as requested by Ms. Rose within the ten-day period, there is little doubt that these concerns would have been addressed.

9

delineated are "reasonably requested." Just as the interpretation of "timely" urged by OSJL ignores the ten-day period provided and renders that language surplusage, Plaintiffs' interpretation of section 29 ignores these two qualifications and renders them surplusage. *See Top of the Track Assocs.*, 654 A.2d at 1296. By its plain language, section 29's ten-day period to return the estoppel certificate provided by a party is triggered only when the certificate provided is true and the assertions contained therein are reasonably requested. The provision is silent on how the parties are to proceed if these conditions are not satisfied. The Court declines to read in a ten-day response period where an untrue or unreasonable estoppel certificate is provided where there is no such period in the plain language of section 29. Indeed, where the consequence for violation of a lease provision is default or termination, "it is well settled that [the] forfeiture provision . . . is to be strictly construed against the party seeking to enforce it, and its enforcement is not to be favored." *Rubin v. Josephsen*, 478 A.2d 665 (Me. 1984).[3] To the extent that section 29 could be arguably construed to impose a ten-day period for response by OSJL when the estoppel certificate provided is untrue or unreasonable, such a construction would be turning the mandate of *Rubin* on its head by strictly construing the provision *against* the defending party and *favoring* forfeiture.

Finally, even if OSJL did have an obligation to respond to the request within ten days of receipt, the Court finds that OSJL in fact did respond to Plaintiffs within that time period. Plaintiffs point out that at the time of that phone call, Ms. Rose expressed concern about a pending request for a memorandum of lease that was brought to her attention by her attorney. Mr. Sholes later testified that he met with Ms. Rose after she received the request for an estoppel certificate/ SNDA

---

[3] Plaintiffs' argument that *Rubin*'s mandate does not apply in this case because (a) it is a commercial lease and (b) section 29 is not a "forfeiture provision" is not supported by the case law. *See ELC, Inc. v. TJG, Inc.*, No. AP-01-12, 2001 Me. Super. LEXIS 106, *2-3 (Aug. 27, 2001); *Housing Auth. of Bangor v. Bush*, No. AP-00-22, 2001 Me. Super. LEXIS 17, *1-2 (Feb. 2, 2001) (*Hjelm, J.*); *Toys "r" Us Delaware, Inc. v. OfficeMax, Inc.*, No. 99-283-B, 2000 U.S. Dist. LEXIS 13267, at *8-9 (D. Me. Sep. 12, 2000).

10

from Ms. Dugas to discuss the request. (Sholes, 6/28/2018, 143:11-22.) Mr. Sholes testified consistently with Ms. Rose (and Ms. Dugas on cross-examination) that his understanding of that conversation was that Ms. Dugas or counsel for Plaintiffs would be calling him to discuss pending issues, including the memorandum of lease and the estoppel certificate. (Sholes, 6/28/2018, 143:21-144:12.) The Court finds that this was where things were left when Ms. Rose and Ms. Dugas concluded their phone call of April 18. Mr. Sholes never received that follow-up phone call—instead, he received "a nice letter from Wendy Paradis" purporting to terminate the lease. (Sholes, 6/28/2018, 144:1-17; *see* Pl's Ex. 8.)

Had that phone call—requested by OSJL within the ten-day period—occurred, there seems little doubt that OSJL's issues with the estoppel certificate could have been resolved. Plaintiffs' argument thus becomes that OSJL not only had a duty to respond to the request for estoppel certificate within ten days—a duty not found within section 29 when the estoppel certificate provided is untrue or makes unreasonable requests—but that OSJL had a duty to raise specific concerns with the request in its first communication with Plaintiffs, or that any follow-up needed to be initiated by OSJL notwithstanding OSJL's request that Ms. Dugas or Plaintiffs' counsel follow-up with Mr. Sholes. Having "dropped the ball" by not following up on the agreement to contact Attorney Sholes, Plaintiffs should not now be permitted to benefit from their inaction and use the resulting delay as a basis to terminate the lease. Even without the contrary guidance of *Rubin*, section 29's plain language cannot support an interpretation that so deeply favors Plaintiffs.

11

## ATTORNEY FEES

The Lease provides that as the prevailing party, OSJL is entitled to recover its attorney fees and costs: "In the event that either party hereto initiates litigation to enforce the terms and provisions of this Lease, the non-prevailing party in such action shall reimburse the prevailing party for its reasonable attorney's fees, filing fees, and court costs." (Pl's Ex. 4, § 38(m) at 26.) Based on the foregoing and the Court's judgment below, OSJL is the prevailing party in this litigation and Plaintiffs are the non-prevailing party.

## CONCLUSION

Based on the foregoing the judgment shall be:

Judgment is entered for the Defendant Ocean State Job Lot of Maine 2017, LLC on Plaintiffs 20 Thames Street, LLC and 122 PTIP, LLC's Complaint for forcible entry and detainer.

Defendant is ORDERED to submit an affidavit/post-judgment petition of costs and attorneys' fees within fourteen days of the entry of this Judgment. Plaintiff shall then have 14 days to file any objection to the attorneys' fees request. The Court will then act on the fee request based on review of the written submissions.

The Clerk is requested to enter this Order on the docket for this case by incorporating it by reference. M.R. Civ. P. 79(a).

Dated: _8/14/18_

_Richard Mulhern_
Richard Mulhern
Judge, Business and Consumer Court