STATE OF MAINE                                     SUPERIOR COURT
KENNEBEC, ss                                       CIVIL ACTION
                                                   DOCKET NO. CV-19-23

HUMBERTO REGO and OLIVIA
REGO,

         Plaintiffs                                **ORDER**

v.

WINSLOW DONUTS, LLC,

         Defendant.


Before the court is Defendant Winslow Donuts, LLC's ("Winslow Donuts's") motion to dismiss. M.R. Civ. P. 12(b)(6). A hearing was held on August 7, 2019. Plaintiffs are Humberto Rego and Olivia Rego ("the Regos"). The Regos are represented by Attorney Ronald Ducharme. Winslow Donuts is represented by Attorneys Eugene Gaudette and David H. Rich (*pro hac vice*).

**Background**

The following facts are taken from the Regos' complaint. The Regos own land and buildings located at 9 Bay Street, Winslow, Maine. (Compl. ¶ 3.) The land and buildings are known as "the premises." (Compl. ¶ 3.) In May 2000 the Regos entered into an agreement to lease the premises to Winslow Donuts to be used for operating a Dunkin' Donuts shop. (Compl. ¶ 3.) The term of the lease agreement was for twenty years. (Compl. ¶ 4.)

On January 23, 2008 the Regos, Winslow Donuts and Da Costa Restaurants, LLC ("Da Costa") entered into an assignment and assumption of lease. (Compl. ¶ 8.) Pursuant to the 2008 assignment, Winslow Donuts assigned the May 2000 lease agreement to Da Costa and Da Costa assumed the obligations of the May 2000 lease. (Compl. ¶ 9.) In April 2008, the Regos and Da Costa entered into an amendment to the May 2000 lease agreement (the "2008 Amendment").

1

(Compl. ¶ 13.) The 2008 Amendment provided that a 50-foot strip of land on a contiguous parcel of property would be used as a drive-thru and that the Regos would provide fill and pave the drive-thru area. (Compl. ¶¶ 14, 17.) In consideration of the drive-thru, the terms of the rent were adjusted and the rent for the remainder of the first ten years of the twenty-year lease would now be $2,000.00 per month or 10% of the gross sales from the business operation of the premises, whichever is greater. (Compl. ¶ 15.) During the remaining ten years of the twenty-year lease, the rent would be $2,500.00 or 10% of the gross sales from the business operation of the Premises, whichever is greater. (Compl ¶ 15.)

On January 13, 2014, the Regos, Da Costa, and Winslow Donuts entered into an assignment and assumption of lease whereby Winslow Donuts assumed the lease from Da Costa. (Compl. ¶ 19.) Winslow Donuts agreed to unconditionally guarantee performance of the obligations of Da Costa for the remaining term of the 2008 Amendment. (Compl. ¶ 20.) On January 23, 2014, Winslow Donuts sent the Regos a letter stating that it was "looking for other sites in the area to relocate the stores." (Compl. ¶ 22.) On December 12, 2016 Winslow Donuts notified the Regos that the Dunkin' Donuts shop would be moved to a new location. (Compl. ¶ 23.) On December 17, 2016, the Dunkin' Donuts shop was relocated from 9 Bay Street to 50 Bay Street, Winslow, Maine. Winslow Donuts has continued to pay the Regos a monthly rent of $2,500.00. (Compl. ¶ 26.)

On February 4, 2019, the Regos filed a complaint against Winslow Donuts. The complaint alleges two causes of action: Count I, Breach of Contract; and Count II, Breach of Implied Duty of Continuous Operation. Winslow Donuts filed a motion to dismiss, M.R. Civ. P. 12(b)(6), on February 8, 2019.

2

## Standard of Review

When reviewing a motion to dismiss pursuant to M.R. Civ. P. 12(b)(6), the court "examine[s] the complaint in the light most favorable to the plaintiff to determine whether it sets forth elements of a cause of action or alleges facts that would entitle the plaintiff to relief pursuant to some legal theory." *In re Wage Payment Litig. v. Wal-Mart Stores, Inc.*, 2000 ME 162, ¶ 3, 759 A.2d 217. The court accepts as true the factual allegations in the complaint and "do[es] not address the credibility, or the provability, of [the] allegations." *Nadeau v. Frydrych*, 2014 ME 154, ¶ 8, 108 A.3d 1254. "Dismissal is warranted when it appears beyond a doubt that the plaintiff is not entitled to relief under any set of facts that he might prove in support of his claim." *Johanson v. Dunnington*, 2001 ME 169, ¶ 5, 785 A.2d 1244.

## Discussion

Although their complaint alleges two separate counts, the Regos are really alleging that Winslow Donuts has breached two provisions of the lease agreement. First, the Regos allege that Winslow Donuts has breached the lease by failing to operate a Dunkin'' Donuts shop upon the premises. (Compl. ¶¶ 30, 32.) Second, the Regos allege that Winslow Donuts has breached the lease agreement by failing to pay the percentage rent of the gross sales from the premises. (Compl. ¶ 30.)

To support their first theory of breach, the Regos—through their complaint—allege that the lease agreement contains an implied covenant of continuous operation and that this covenant was breached when Winslow Donuts relocated its Dunkin'' Donuts shop. (Compl. ¶ 32.) In their opposition, the Regos also argue that the purpose and use clause of the lease requires the continuous operation of a Dunkin'' Donuts shop on the premises. (Pl.'s Opp. at 6.)

3

Pursuant to Maine law, all contracts contain an implied covenant "that neither party shall by its unilateral action destroy or injure the right of the other party to receive the fruits or benefits of the contract or render performance impossible." *Top of the Track Assocs. v. Lewiston Raceways,* 654 A.2d 1293, 1295 (Me. 1995). Consequently, "[a] contract includes not only the promises set forth in express words, but, in addition, all such implied provisions as are indispensable to effectuate the intention of the parties and as arise from the language of the contract and the circumstances under which it was made." *Id.* (quotation omitted). However, "The implication of a contract term is only justified when the implied term is not inconsistent with some express term of the contract and when there arises from the language of the contract itself, and circumstances in which it was entered into, an inference that it is absolutely necessary to introduce the term to effectuate the intention of the parties." *Id.* (quotation omitted).

In *Top of the Track*, the Law Court held that the Superior Court had erred in granting summary judgment because a genuine issue of material fact existed regarding the intention of the parties to a contract. *Id.* at 1296. The contract at issue was a lease agreement whereby the plaintiff would pay for and construct improvements to a racetrack clubhouse, after which the racetrack would own the improvements, in exchange for the plaintiff's exclusive right to operate restaurant facilities and concessions at the racetrack. *Id.* at 1294. Rent would be paid in the form of a percentage of the gross receipts from the concessions and restaurant. *Id.* After a number of years, the racetrack ceased operation and the plaintiff went out of business. *Id.* The Plaintiff subsequently filed a complaint alleging that the racetrack had breached an implied term of the contract which required the racetrack to operate the track for the lifetime of the lease. *Id.* The Trial court granted summary judgement in favor of the racetrack and the plaintiff appealed.[1] *Id.* at 1294-1295.

---

[1] The appeal decision also notes that the racetrack had filed a 12(b)(6) motion to dismiss prior to filing a motion for summary judgment.

4

On appeal the Law Court held that the lease agreement's integration clause did not, as a matter of law, preclude "the implication of any additional obligation in the lease." *Id.* at 1296. The Law Court then held that a genuine issue of material fact existed regarding the intention of the parties relative to the continued operation of the track. *Id.*

Although *Top of the Track* could be interpreted to stand for the broad proposition that a claim for breach of an implied contract term is always a question of fact for the fact-finder, the Law Court has clarified that it was the "unique facts of the case" which allowed the Court to consider inferring a covenant of continuous operation. *Haines v. Great N. Paper, Inc.*, 2002 ME 157, ¶ 14, 808 A.2d 1246.[2] The specific facts which the Court relied upon to find a factual dispute regarding the existence of an implied duty of continuous operation were the dependence of the restaurant on the operation of the racetrack and the restaurant's "significant change of position and [expenditure of] funds in responsible anticipation of continued operation of the race track." *Id.* The *Haines* court then went on to state that no facts supported the existence of such a dependent business relationship in the case before it and declined to infer the existence of an implied covenant. *Id.* In light of *Haines*, it therefore appears that an implied covenant of continuous operation should only be inferred where there is a condition of business dependency and responsible anticipation of continued operation. *Id.*

In this case the complaint alleges no facts which, if true, would supported a finding that, in order to obtain the fruits of their lease agreement, the Regos—as the Lessors of the premises—are

---

[2] In *Haines*, the Law Court affirmed the Trial Court's entry of summary judgment for the defendant. ¶ 1. The plaintiff and defendant had made an agreement whereby the plaintiff would withdraw its opposition to the issuance of Federal licenses to the Defendant in exchange for the Defendant agreeing to eliminate current, and not impose future, recreational access fees to forest land owned by the Defendant. *Id.* ¶ 2. A few years later the defendant sold some of the forest land to another entity which then began charging recreational use fees. *Id.* ¶¶ 3-4. The plaintiff then filed a lawsuit alleging the defendant had breached an implied covenant limiting alienation of lands and barring transferees of lands from imposing fees inconsistent with the agreement. *Id.* ¶ 14.

wholly dependent upon the continuous operation of the Premises as a Dunkin' Donuts shop. The rent payment provisions provide that the Regos will be paid rent in the higher amount of either $2500 or 10% of gross sales from the premises. Receipt of the $2500.00 monthly rent is not dependent on the continuous operation of a Dunkin' Donuts shop at the premises. Consequently, the complaint has not alleged facts which would allow a factfinder to infer the existence of an implied covenant of continuous operation.[3] *See id.; Top of the Track Assocs.*, 654 A.2d 1293; *see also Wortly v. Camplin*, No. 01-122-P-H, 2001 U.S. Dist. LEXIS 20441, at **24-25 (D. Me. Dec. 10, 2001).

In their opposition, the Regos also argue that the "Purpose and Use" clause of the lease agreement creates an express obligation that Winslow Donuts continuously operate a Dunkin' Donuts shop at the premises. This clause states in part: "The Lessee shall use the Premises only for the operation of a Dunkin'' Donut Shop and for no other purpose without the approval of the Lessors, which approval shall not be unreasonably withheld." As Winslow Donuts points out in its supporting memorandum, many courts which have construed similar lease provisions have interpreted those provisions to allow the lessee to either "(1) refrain from using the premises; or (2) use the premises" as specified in the lease. *See Sampson Investments by Sampson v. Jondex Corp.*, 499 N.W.2d 177, 180 (Wis. 1993); *Dickey v. Phila. Minit-Man Corp.*, 377 Pa. 549, 552, 105 A.2d 580, 581 (1954) ("Generally speaking, a provision in a lease that the premises are to be

---

[3] The Regos also state that, in addition to *Top of the Track*, their claim for breach of the implied covenant is "based upon numerous cases in multiple jurisdictions." (Pl.'s Opp. at 6.) The Regos support this statement by citing to a treatise compiling cases discussing the effect of minimum rent provisions in percentage lease agreements. The cases compiled in this treatise suggest that a covenant of continuous operation can be implied in leases where the minimum rent is not an "adequate minimum in the circumstances." Andrew R. Berman, *Friedman on Leases* § 6:9.1 at 6-46 (6th ed., April 2019). Unfortunately for the Regos, the complaint does not allege any facts which, if true, would support a finding that the minimum rent in the Lease Agreement is not adequate. Perhaps more importantly, however, the legal principles discussed in the *Friedman* treatise have not been adopted in Maine. Given this fact, the *Top of the Track* and *Haines* cases remain the most accurate statements of the law governing the implication of covenants of continuous operation.

6

used only for a certain prescribed purpose imports no obligation on the part of the lessee to use or continue to use the premises for that purpose; such a provision is a covenant against a noncompliance use, not a covenant to use.").

The court has not found any case law which would support the Regos' position and the Regos themselves have not supplied any. Although Maine does not appear to have addressed this issue, the Law Court has indicated that clauses restricting the use of property are to be strictly construed. *See Friedlander v. Hiram Ricker & Sons, Inc.,* 485 A.2d 965, 972 (Me. 1984) ("Restrictive covenants ought not to be extended by implication or enlarged by construction and deed provisions restricting the free use of property will be strictly construed against the limitation, doubts being resolved in favor of the unrestricted use of property."). In light of this, the court believes that the law of Maine is as of now in line with the general rule that clauses which restrict the use of property to a certain purpose do not obligate the continuous use of that property for that purpose. Thus, as a matter of law, the lease agreement in this case does not expressly obligate Winslow Donuts to operate a Dunkin' Donuts shop at the premises. Consequently, the Regos complaint does not state a claim for breach of an express duty to continuously operate the Dunkin'' Donuts shop.

The court also concludes that the complaint does not state a claim for breach of the Lease's rent payment provision. Pursuant to both the complaint and the attached 2008 amendment to the lease agreement, monthly rent was to be paid in the amount of "TWO THOUSAND FIVE HUNDRED DOLLARS ($2,500.00) *or* TEN PERCENT (10%) of the gross sales from the business operation of the Premises, *whichever is greater.* (Compl. ¶ 15; 2008 Amend. Lease Agreement at 1.) (emphasis added). Because the complaint alleges that Winslow Donuts has ceased operating a business at the premises, the only inference which the factfinder could draw

7

from this is that there are no gross sales from the business operation of the premises and that consequently the monthly rent due under the agreement is $2,500.00.[*] Because the complaint alleges that Winslow Donuts has paid the monthly rent of $2,500.00, there are no facts the plaintiffs could prove which would entitle them to relief for breach of the rent payment provision of the lease agreement.

## Conclusion

The facts of the complaint and provisions of the lease do not support a finding that the lease agreement includes an implied covenant of continuous operation. The purpose and use clause of the lease does not obligate Winslow Donuts to continuously operate a Dunkin'' Donuts shop at the premises. The complaint alleges that Winslow Donuts is continuing to pay the rent. For these reasons, the complaint fails to state a claim upon which relief can be granted.


The entry is

Defendant Winslow Donuts, LLC's Motion to Dismiss is GRANTED


Date: 8/21/19

Justice, Superior Court

---

[*] The Complaint does not allege that there are gross sales from the premises despite the fact that the premises is no longer being used.

8